**Affirmed in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed August 19, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00634-CV

---

**WANDA KAY COHEN, Appellant**

**V.**

**LANDRY'S INC., LANDRY'S CRAB SHACK, INC., AND LANDRY'S SEAFOOD & OYSTER BAR-KEMAH, INC., Appellees**

---

**On Appeal from the 405th Judicial District Court
Galveston County, Texas
Trial Court Cause No. 11-CV-1942**

---

## M A J O R I T Y   O P I N I O N

Appellant Wanda Kay Cohen contends the trial court erred in granting summary judgment on her premises liability claim in favor of appellees, Landry's Restaurants, Inc., Landry's Crab Shack, Inc., and Landry's Seafood Inn & Oyster Bar-Kemah, Inc. (collectively referred to as "Landry's"). Concluding that Landry's did not establish as a matter of law that it owed no duty to Cohen and

Cohen presented more than a scintilla of probative evidence to raise a genuine issue of material fact regarding each challenged element of her premises liability claim, we reverse and remand the trial court's summary judgment as to that claim. We affirm the trial court's summary judgment as to Cohen's other claims, as they have not been challenged on appeal.

## *Background*

On December 9, 2009, Cohen was walking to a restaurant on the Kemah Boardwalk in Kemah, Texas when she allegedly tripped and fell on the sidewalk. There was a 1/2 to 1 inch elevation between two abutting sections of sidewalk, apparently caused by tree root growth underneath the sidewalk. Cohen sued Landry's for her injuries and asserted premises liability, negligence, and gross negligence causes of action.

Landry's filed a no-evidence motion for summary judgment as to each of Cohen's causes of action, asserting because Landry's did not possess the premises where the injury occurred, it owed Cohen no duty to repair or maintain the sidewalk and that Cohen could produce no evidence to prove any of the elements of premises liability. As is appropriate for a no-evidence motion for summary judgment, no evidence was attached. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Before Cohen responded to the motion, Landry's filed a "Supplemental Motion for Summary Judgment" and attached supporting evidence purporting to disprove the element of duty required for Cohen's premises liability cause of action.[1] The evidence purportedly established that the sidewalk was owned by the City of Kemah and was outside the

---

[1] In its brief, Landry's states that "[a]lthough Landry's referenced [the no-evidence summary judgment] rule in the [supplemental motion's] first paragraph, it is clear that the supplemental motion was based on a traditional [summary judgment] standard under [Texas] Rule [of Civil Procedure] 166a(c)."

2

premises leased by Landry's. In response to both motions, Cohen presented evidence that purportedly shows the City did not have any records concerning "ownership, maintenance or code enforcement" at the Kemah Boardwalk and evidence of a proposal from a private company addressed to Landry's for repairs to the sidewalk.

The trial court expressly granted the no-evidence summary judgment motion and rendered final summary judgment in Landry's favor as to all of Cohen's claims without specifying the grounds. On appeal, Cohen complains only of the trial court's summary judgment as to her premises liability claim.[2]

## *Discussion*

In her sole issue, Cohen contends that she produced evidence on each challenged element of her premises liability claim sufficient to avoid summary judgment. We review the trial court's granting of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 661 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). In reviewing either a no-evidence or a traditional summary judgment motion, all evidence favorable to the nonmovant is taken as true, and we draw every reasonable inference and resolve all doubts in favor of the nonmovant. *Lone Star Air Sys., Ltd. v. Powers*, 401 S.W.3d 855, 858 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

In a no-evidence motion for summary judgment, the movant asserts there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Timpte*

---

[2] Accordingly, we need not review the trial court's summary judgment as to Cohen's other claims. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) ("[C]ourts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error.").

*Indus., Inc.*, 286 S.W.3d at 310. A no-evidence summary judgment is improperly granted if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 50 (Tex. App.—Houston [14th Dist.] 2007, no pet.). We will sustain a no-evidence motion for summary judgment when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2014, no. pet. h.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005)).

More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Less than a scintilla of evidence exists if the evidence creates no more than a mere surmise or suspicion of a fact regarding a challenged element. *Forbes Inc.*, 124 S.W.3d at 172; *Mendoza*, 276 S.W.3d at 655. If the nonmovant does not satisfy its burden of production on the no-evidence motion, there is no need to analyze whether the movant satisfied its traditional summary judgment burden. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Pipkin*, 383 S.W.3d at 662.

A party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmovant,

indulging every reasonable inference and resolving any doubt in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661.

## I. Landry's supplemental motion gave Cohen fair notice.

The parties dispute whether Landry's supplemental summary judgment motion merely supplemented the no-evidence motion or was a separate traditional motion for summary judgment.[3] Cohen argues the supplemental motion was ambiguous and did not give her fair notice of the basis on which Landry's was moving for summary judgment.

A motion for summary judgment should state the specific grounds for summary judgment. Tex. R. Civ. P. 166a(c), (i). A motion for summary judgment also must give fair notice of the basis on which summary judgment is sought. *Waite v. Woodard, Hall & Primm, P.C.*, 137 S.W.3d 277, 281 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding when movant only cited rule for no-evidence summary judgment, did not recite traditional standards for summary judgment, and did not attempt to establish that there was no issue of material fact and that it was entitled to judgment as a matter of law, motion did not give fair notice that it sought traditional summary judgment). Cohen apparently argues that she was confused as to the basis—traditional or no-evidence—under which Landry's sought summary judgment, not that it failed to provide her with fair notice of the grounds for summary judgment. When a summary judgment is attacked as being vague or lacking specificity, a special exception is required. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) (plurality op.) ("An exception is required should a non-movant wish to complain on appeal that the grounds relied on by the movant were unclear or ambiguous.");

---

[3] Both the no-evidence motion and the supplemental motion were filed more than twenty-one days before the hearing.

*Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 784 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The excepting party must obtain a ruling on the special exception to preserve the issue for appeal. *Franco*, 154 S.W.3d at 784. As a general rule, a complaint is preserved for appellate review only if the record establishes the complaint was made known to the trial court in a timely manner and the trial court ruled on the complaint. *See* Tex. R. App. P. 33.1(a); *Franco*, 154 S.W.3d at 784.

Cohen did not present her ambiguity and fair notice arguments to the trial court; therefore, we do not consider them on appeal. *See Franco*, 154 S.W.3d at 784-85. However, for purposes of applying the proper standard of review, we must decide the nature of the supplemental motion. The nature of a motion is determined by its substance, not its title or caption. *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 72 (Tex. 2008); *Rush v. Barrios*, 56 S.W.3d 88, 93 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). This same standard applies to determine the nature of a motion for summary judgment as no-evidence or traditional. *See Davis v. Canyon Creek Estates Homeowners Ass'n*, 350 S.W.3d 301, 308 (Tex. App.—San Antonio 2011, pet. denied) (holding court should determine nature of motion for summary judgment as traditional or no-evidence after considering substance of motion, rather than categorizing motion strictly by its form or title); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 375 (Tex. App.—Dallas 2009, pet. denied) (same).

In considering the substance of the supplemental motion, we note it is captioned "supplemental" and purports to provide "supplemental" argument and authorities. We further note that the motion on page one recited the subsection of the Rule of Civil Procedure applicable to no-evidence motions for summary

6

judgment.[4]  *See* Tex. R. Civ. P. 166a(i).  However, on page two, Landry's then described the evidence attached and under the "Summary Judgment Standard" section of the supplemental motion, recited the standards applicable to traditional summary judgments.  *See* Tex. R. Civ. P. 166a(a)-(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).  Landry's attached evidence to the motion and argued that it owed no duty as a matter of law to Cohen.  Our review of the supplemental motion leads us to conclude, that, although not a model of clarity, it is a traditional motion for summary judgment.

The trial court expressly granted only the no-evidence motion.  However, in reviewing a summary judgment, we consider all grounds presented to the trial court and preserved on appeal in the interest of judicial economy.  *Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013).  When both parties bring forth summary judgment evidence, the ultimate issue is whether a fact issue exists.  *Id*. at 59.  Accordingly, in the interest of judicial economy, we analyze this case under both standards for no-evidence and traditional motions for summary judgment as to the duty element of premises liability.  We analyze the other elements under the no-evidence standard, as Landry's only moved for no-evidence summary judgment as to those elements.

**II.    Landry's did not establish it owed no duty to Cohen as a matter of law, and Cohen presented more than a scintilla of probative evidence to raise a genuine issue of material fact as to each challenged element of premises liability.**

Landry's argued in both motions that, as a matter of law, it did not owe Cohen a duty because it did not own, occupy, or control the sidewalk where Cohen was injured.  In the no-evidence motion, Landry's also contended that Cohen could

_____

[4] The supplemental motion reads, "Pursuant to Tex. R. Civ. P. 166a(i), . . . Landry's . . . file[s] this Supplemental Motion for Summary Judgment."

7

not present evidence of the following elements of premises liability: that (1) Landry's knew or reasonably should have known of the condition of the sidewalk; (2) the condition posed an unreasonable risk of harm; (3) Landry's failed to exercise reasonable care to reduce or eliminate any risk; and (4) such failure proximately caused Cohen's injuries. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010); *In re HEB Grocery Co., L.P.*, 375 S.W.3d 497, 500-01 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

### A. Genuine issue of material fact regarding Landry's control of the sidewalk.

As set forth above, Landry's moved for summary judgment both on no-evidence and traditional grounds, asserting that it did not owe a duty to Cohen as a matter of law because it did not own, occupy, or control the sidewalk where Cohen allegedly was injured.

To establish premises liability, a plaintiff must show that the defendant had control over and responsibility for the premises. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 909 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The control must relate to the condition or activity that caused the injury. *Id.* Control can be demonstrated by ownership, occupation, management, or possession of the premises. *Rogers v. Tex. Sterling Constr., L.P.*, No. 14-05-01061-CV, 2007 WL 925784, at *3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2007, no writ) (mem. op.) (citing *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 54 (Tex. 1997)). Control can be proven by either a contractual agreement expressly assigning the right of control or an actual exercise of control. *Id.* (citing *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002)).

Landry's argues Cohen failed to present evidence proving Landry's exercised control over the sidewalk at the time of Cohen's alleged injury.

8

However, Cohen presented an invoice from a construction company addressed to Landry's Seafood Restaurants, Inc. with a proposal to repair the sidewalk where the injury occurred.[5] Landry's argues because the invoice was prepared nearly two years after Cohen was injured, it does not show Landry's controlled the sidewalk at the time of the accident. But it does show that Landry's, on its own initiative, solicited a bid and possibly undertook to repair the sidewalk after Cohen was injured.[6] *See Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993) (holding ramp outside of leased premises was controlled by lessee for purposes of premises liability because lessee "[o]n its own initiative and at its own expense . . . built the ramp after leasing the premises"). Moreover, evidence of subsequent remedial measures, although inadmissible as to negligence, is admissible to prove control when that issue is controverted. *See* Tex. R. Evid. 407(a); *see also Kershner v. Dyer*, No. 01-09-01002-CV, 2010 WL 2723178, at *4 (Tex. App.—Houston [1st Dist.] July 8, 2010, no pet.) (mem. op.) (holding that defendant did not control property where plaintiff fell because defendant presented evidence that, among other things, third party subsequently repaired the defect and thus controlled maintenance of the property); *Tyson Foods, Inc. v. Guzman*, 116 S.W.3d 233, 241-42 (Tex. App.—Tyler 2003, no pet.) (holding evidence of subsequent remedial measures taken after accident was admissible in negligence case to show general contractor retained some control over manner in which

---

[5] It is undisputed that Cohen fell on the sidewalk in front of the Starbucks. The invoice expressly states it was for "labor and materials" to "[b]reak out and remove the existing concrete side walk at the front of the Starbucks," among other things.

[6] It is not clear from the invoice whether Landry's actually fixed the sidewalk. As discussed below, Landry's argues that its lease agreement conclusively proves that it did not control the sidewalk because it is outside the leased premises. However, the same lease agreement was in effect when Landry's solicited the bid. That nothing had changed in Landry's status as a tenant between the time of the injury and the time Landry's solicited the bid to repair the same section of sidewalk is some indication that Landry's had the ability to make the repairs before Cohen was injured.

9

independent contractor performed work because issue of control was controverted).  This is more than a scintilla of evidence of control over the sidewalk.

Landry's argues, however, that under Texas law, sidewalks are part of the street and the duty to maintain sidewalks belongs to the city where the sidewalks are located.  Setting aside the fact that Landry's did not present any evidence that the sidewalks on Kemah Boardwalk are owned or maintained by the City, as opposed to being privately owned,[7] the cases cited by Landry's did not involve situations where the owner or occupier of property near a sidewalk purportedly exercised actual control of the subject sidewalks.[8]

We conclude Cohen presented more than a scintilla of evidence that

----

[7] Cohen also presented evidence purporting to show that the City had no documents indicating it owned or maintained the sidewalk.  The evidence consisted of discovery directed at the City's custodian of records, seeking "[a]ll documents concerning ownership, maintenance and code enforcement at the Kemah Boardwalk."  The City responded "n/a" to each question seeking these documents but did not specifically address whether it had documents pertaining to ownership, maintenance, or control of sidewalks at the Kemah Boardwalk.

[8] *See Spohn Health Sys. Corp. v. Silva*, 960 S.W.2d 654 (Tex. 1997) (noting the unremarkable proposition that a person does not have control of "a non-owned premises merely because that person owns the adjacent property"); *Grapotte v. Adams*, 130 Tex. 587, 589, 111 S.W.2d 690, 691 (1938) (describing sidewalk as "in the street in front of [a storage] garage," acknowledging "general rule" that "a sidewalk is a part of the street and the duty to exercise ordinary care to maintain such sidewalk in a reasonably safe condition for the use of the public rests upon the city, and not upon the abutting property owner," and finding no facts "in this record that take this case" out of the general rule); *Matthews v. State*, 165 S.W.3d 104, 114 (Tex. App.—Fort Worth 2005, no pet.) (holding that public sidewalk, curb, and street were not within curtilage of criminal defendant's home and scope of search warrant did not include criminal defendant's vehicle parked on the street); *Howe v. Kroger Co.*, 598 S.W.2d 929, 931 (Tex. Civ. App.—Dallas 1980, no writ) (holding that because Kroger's lease agreement did not include areas outside of leased premises, Kroger had no duty to maintain them but not addressing whether Kroger assumed actual control of those areas); *Parra v. F. W. Woolworth Co.*, 545 S.W.2d 596, 598 (Tex. Civ. App.—El Paso 1977, no writ) (noting, when parties stipulated that sidewalk belonged to City of El Paso, that generally owner or occupier of land adjacent to public sidewalk does not, solely by being an abutter, owe to the public a duty to keep the sidewalk in safe condition, unless the owner or occupier makes a special use of the sidewalk).

10

Landry's exercised control over the sidewalk where Cohen's injury occurred. We now turn to the evidence presented by Landry's to determine whether it conclusively established that it did not control the sidewalk.

Landry's presented the following evidence in its supplemental motion: Cohen's testimony describing where her injury occurred; Landry's redacted lease agreement, including a legal description of the leased premises; and a survey of the leased premises and surrounding area. Landry's argues this evidence shows that the area where Cohen fell was owned by the City and "not owned, leased or controlled" by Landry's. At most, this evidence shows that the sidewalk where Cohen fell was not part of the premises leased by Landry's. It does not show whether Landry's exercised actual control of the sidewalk. *See Wal-Mart*, 868 S.W.2d at 324 (holding Wal-Mart assumed actual control of premises, even though area was not covered by lease and landlord possessed it). Moreover, it does not show that the City owned or controlled the sidewalk, as Landry's contends. In addition, as set forth above, the same lease agreement was in effect both when Cohen was injured and when Landry's obtained a bid and possibly repaired the sidewalk. This further identifies a fact question as to whether Landry's had the authority (or responsibility) to repair and maintain sidewalk at the time of the accident.

Viewing all of the evidence in the light most favorable to Cohen, we conclude that a fact question exists regarding whether Landry's had actual control of the sidewalk when Cohen was injured.

### B. Evidence that Landry's had actual or constructive knowledge of a dangerous condition.

The crux of Landry's "duty depends on actual or constructive knowledge of a dangerous condition that a reasonable inspection would reveal." *See In re HEB*

*Grocery Co.*, 375 S.W.3d at 501; *see also CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000).  One way a slip-and-fall plaintiff satisfies the notice element is by establishing it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it.  *Pipkin*, 383 S.W.3d at 671.  "[A]n owner or occupier is not liable for deterioration of its premises unless it knew of or by reasonable inspection would have discovered the deterioration."  *CMH Homes, Inc.*, 15 S.W.3d at 101.  In premises cases, constructive knowledge is established by showing that the condition had existed long enough for the owner or occupier to have discovered it upon reasonable inspection.  *Id.* at 102-03.

Cohen presented an expert report from a professional engineering consultant and certified safety professional, in which he opined:

- [T]he presence of an approximate 1/2 to 1-inch rise extending across the exterior concrete walking surface due to one section of concrete walkway becoming displaced from the adjacent section, creat[ed] a significant trip and fall hazard for pedestrians walking along the sidewalk toward the driveway intersection.

- A reasonable inspection of the premises in this matter by a knowledgeable person would have identified this recognized fall hazard in what is likely a fairly high-traffic walkway.

- Landry's knew or should have known through logic, along with the content of the published authoritative safety literature and standards, that the hazard associated with small abrupt rises in walking surfaces creates a serious risk for a fall.

- Small abrupt changes in elevation such as that present in the exterior concrete walkway in this matter have long been recognized in the codes, standards, and authoritative safety literature as presenting a serious and unreasonable risk of pedestrian missteps and falls.  These small elevation differences are difficult to visually perceive as one approaches an area, and

12

often go unnoticed due to human factors related to vision and the walking process.

- Small changes in elevation such as present in the sidewalk in this matter are significant hazards with a high risk of causing falls, and typically form over a period of time due to various potential factors, such as ground heaving or settling, roots of nearby vegetation, exposure to heavy loads (such as vehicles), soil erosion, or other various means.

Cohen presented additional evidence that the sidewalk had been damaged from tree roots over time. The repair proposal prepared for Landry's was for "labor and materials" to "[e]xcavate down and remove all problematic roots causing the sidewalk to raise previously." Cohen also presented her deposition testimony in which she stated that she tripped over an elevated section of sidewalk uneven with the adjacent sidewalk sections in the same location of the sidewalk damage later sought to be repaired by Landry's. Thus, Cohen presented evidence that a reasonable inspection of the area would have revealed uneven sections of the sidewalk that were formed over time.

We conclude that Cohen presented more than a scintilla of probative evidence to raise a genuine issue of material fact that Landry's knew or reasonably should have known of the hazardous condition of the sidewalk.

### C. Evidence that the condition of the sidewalk posed an unreasonable risk of harm.

A condition is unreasonably dangerous if it presents an unreasonable risk of harm. *Pipkin*, 383 S.W.3d at 671. A condition poses an unreasonable risk of harm for premises-defect purposes when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen. *Id.* The extent to which a condition is unreasonably dangerous is ordinarily a fact question but can be determined as a

13

matter of law. *Id.* When determining whether a harmful event resulting from a condition was probable and foreseeable, courts often have considered, among other things, (1) whether the condition was clearly marked; (2) the height of the condition; and (3) whether the condition met applicable safety standards. *Martin v. Chick-Fil-A*, No. 14-13-00025-CV, 2014 WL 465851, at *3-4 (Tex. App.—Houston [14th Dist.] Feb. 4, 2014, no pet.) (mem. op.); *see also Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (holding pedestrian ramp was not unreasonably dangerous because it was outlined in yellow stripping, which was a common method to indicate elevation change).

First, the uneven sidewalk was not clearly marked. Cohen's expert opined, "Landry's fail[ure] to color mark the walkway hazard . . . to visually attract attention to the change of elevation and warn pedestrians of its presence so they can attempt to avoid or navigate the hazard" and "lack of adequate exterior lighting on the sidewalk at the location of the fall . . . further increased the risk associated with this walkway hazard."

Second, the height of the condition, although a small elevation difference in the sidewalk, was significant because it was difficult to see. Cohen's expert concluded the uneven sidewalk "creat[ed] a significant trip and fall hazard for pedestrians walking along the sidewalk" and "present[ed] a serious and unreasonable risk of pedestrian missteps and falls" because such elevation differences "are difficult to visually perceive as one approaches . . . and often go unnoticed due to human factors related to vision and the walking process."

Third, Cohen presented evidence the uneven sidewalk did not meet applicable safety standards. Her expert opined that Landry's "knew or should have known through . . . published authoritative safety literature and standards, that the hazard associated with small abrupt rises in walking surfaces creates a serious risk

14

for a fall."[9]  He concluded that "[s]mall abrupt changes in elevation such as that present in the exterior concrete walkway in this matter have long been recognized in the codes, standards, and authoritative safety literature as presenting a serious and unreasonable risk of pedestrian missteps and falls."

We conclude Cohen presented more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether the uneven sidewalk posed an unreasonable risk of harm.

### D. Evidence Landry's failed to exercise reasonable care to reduce or eliminate unreasonable risk of harm.

An owner or occupier of land must use reasonable care to protect an invitee from known conditions that create an unreasonable risk of harm and conditions that should be discovered by the exercise of reasonable care.  *Mayer*, 278 S.W.3d at 910.  This duty is discharged by warning the invitee of unreasonable risks of harm either known to the owner or which would be known to him by reasonable inspection or making the premises reasonably safe.  *McCaughtry v. Barwood*

---

[9] Cohen's expert listed and quoted from the following safety standards:  International Building Code–2003 Edition ("Minor changes in elevation, such as a single step that is located in any portion of the means of egress . . . may not be readily apparent during normal use or emergency egress and are considered to present a potential tripping hazard."); International Fire Code–2003 Edition (same); National Fire Protection Association 101 Life Safety Code–2006 Edition ("Although small changes of elevation [exceeding 1/4 inch] pose significant fall risks in the case of individual movement, they are even more undesirable where crowds traverse the area."); International Property Maintenance Code–2003 Edition ("[S]idewalks . . . shall be kept in a proper state of repair, and maintained free from hazardous conditions."); ASTM International: F 1637–"Standard Practice for Safe Walking Surfaces"–1995 ("Exterior walkway conditions that may be considered substandard and in need of repair include conditions in which the pavement is . . . raised . . . to the extent that pieces may be readily removed. . . .  Exterior walkways shall be repaired or replaced where there is an abrupt variation in elevation between surfaces."); American National Standards Institute: ICC/ANSI A117.1–"American National Standard for Accessible and Usable Buildings and Facilities"–2003 (originally published in 1961) ("Changes in level . . . present a greater potential tripping hazard because of the increased likelihood of a crutch tip or toe of a show catching the edge."); Texas Accessibility Standard–1994 ("Changes in level greater than 1/2 inch shall be accomplished by means of a ramp."); and Americans with Disabilities Act–28 CFR Part 36–1994 (same).

*Homes Ass'n*, 981 S.W.2d 325, 330 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

Cohen's expert opined:

> [T]he most effective means to prevent exposure to a hazard [is] to first remove or eliminate the hazard if at all possible, and if such hazard cannot be eliminated, then the next most effective method is to physically safeguard the hazard with appropriate safety devices to prevent or minimize exposure, and after all means for removal and safeguarding have been exhausted, any remaining hazards should be addressed (controlled) through the proper use of warnings, procedures/training, and/or personal protective equipment.

As set forth above, Cohen presented evidence that she tripped and fell over an uneven surface of the sidewalk that was caused over time by tree roots. Landry's had not repaired or otherwise marked the sidewalk to warn pedestrians of the hazard.

We conclude Cohen presented more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether Landry's exercised reasonable care to reduce or eliminate the uneven surface of the sidewalk.

### E. Evidence that Landry's failure to use reasonable care proximately caused Cohen's injury.

The proximate cause element has two components: cause-in-fact and foreseeability. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). The test for cause-in-fact, or "but-for" causation, is whether the act or omission was a substantial factor in causing the injury and without the act or omission, the harm would not have occurred. *Id.* Cohen had the burden to present evidence that her injury was a foreseeable result of a failure by Landry's to use reasonable care to reduce or eliminate the unreasonably dangerous condition of the uneven sidewalk and that Landry's failure was a substantial factor in causing her injuries. *See id.*

16

Mere proof that Cohen was injured is not proof of proximate cause. *See id.*

Cohen presented deposition testimony that she was injured when she tripped over the uneven sidewalk and fell. Her expert also opined,

> [T]he principal causative factor related to this incident was the presence of an approximate 1/2 to 1-inch rise extending across the exterior concrete walking surface due to one section of concrete walkway becoming displaced from the adjacent section, creating a significant trip and fall hazard for pedestrians walking along the sidewalk.

He indicated that, under applicable safety codes and standards and "through logic," falls similar to Cohen's resulting from uneven sidewalks and walkways are foreseeable.[10] He concluded that "Landry's allowed this unreasonably dangerous condition to form and remain on [its] premises, with such condition ultimately causing Mrs. Cohen to trip and fall."

We conclude Cohen presented more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether Landry's failure to use reasonable care proximately caused Cohen's injury.

---

[10] According to the expert,

> Landry's knew or should have known through logic, along with the content of the published authoritative safety literature and standards, that the hazard associated with small abrupt rises in walking surfaces creates a serious risk for a fall. . . . Landry's knew or should have been aware of the . . . codes and standards that recognize the fall hazard associated with small changes of elevation in walking surfaces, and require or recommend any change of elevation that cannot be removed (by making level or flush) be transitioned as noted [in the safety standards].

17

Concluding that Landry's did not establish as a matter of law that it owed no duty to Cohen and Cohen presented more than a scintilla of probative evidence to raise a genuine issue of material fact regarding each challenged element of her premises liability claim, we reverse the judgment of the trial court in favor of Landry's as to that claim.  We affirm the trial court's summary judgment as to Cohen's other claims, as they have not been challenged on appeal, and remand the case for proceedings consistent with this opinion.


/s/  Martha Hill Jamison
    Justice

Panel consists of Chief Justice Frost, Justices Jamison and Wise (Frost, C.J., Dissenting).