

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00043-CV

_____

PATRICIA LOWE, Appellant

V.

BROOKSHIRE GROCERY COMPANY, Appellee

On Appeal from the 62nd District Court
Hopkins County, Texas
Trial Court No. CV43829

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Patricia Lowe sued Brookshire Grocery Company for premises liability after she tripped near a crack on the surface of a Brookshire parking lot, fell, and sustained injuries. The trial court granted Brookshire's no-evidence and traditional motions for summary judgment, sustaining Brookshire's argument that nothing showed it had actual or constructive knowledge of an unreasonably dangerous condition in the portion of the parking lot where Lowe fell. As a result, the trial court entered a take-nothing judgment against Lowe.

On appeal, Lowe argues that the trial court erred in granting the summary judgments because she produced more than a scintilla of evidence on each element of her premises liability claim and, as a result, Brookshire was not entitled to judgment as a matter of law. We find that the trial court properly granted Brookshire's no-evidence motion for summary judgment. Accordingly, we affirm the take-nothing judgment.

*(1)    Standard of Review and Relevant Caselaw*

"We review the trial court's summary judgment de novo." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* When, as here, "both traditional and no-evidence summary judgments are reviewed, we look first at the no-evidence motion." *Est. of Grogan*, 595 S.W.3d 807, 812 (Tex. App.—Texarkana 2020, no pet.) (citing *City of Wolfe City v. Am. Safety Cas. Ins. Co.*, 557 S.W.3d 699, 702 (Tex. App.—Texarkana 2018, pet. denied) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005))).

"A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *Clayton v. Walmart Inc.*, No. 06-20-00035-CV, 2020 WL 7268585, at *1 (Tex. App.—Texarkana Dec. 11, 2020, no pet.) (mem. op.) (quoting *Padron v. Catholic Diocese*, No. 06-19-00087-CV, 2019 WL 1548637, at *3 (Tex. App.—Texarkana Apr. 10, 2019, no pet.) (mem. op.)) (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)). "We must determine whether the plaintiff produced any evidence of probative force to raise a fact issue on the material questions presented." *Id.* (quoting *Padron*, 2019 WL 1548637, at *3 (citing *Rodriguez*, 92 S.W.3d at 506; *Woodruff v. Wright*, 51 S.W.3d 727, 734 (Tex. App.—Texarkana 2001, pet. denied)). "The plaintiff will defeat a defendant's no-evidence summary judgment motion if plaintiff presented more than a scintilla of probative evidence on each element of its claim." *Id.* (quoting *Padron*, 2019 WL 1548637, at *3) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 657 (Tex. App.—Texarkana 2013, no pet.)).

"More than a scintilla of evidence exists when the evidence reaches a level enabling reasonable and fair-minded people to differ in their conclusions." *Petrohawk Props., L.P. v. Jones*, 455 S.W.3d 753, 770 (Tex. App.—Texarkana 2015, pet. dism'd) (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

"In premises-liability cases, the scope of a landowner's responsibility turns on the plaintiff's status." *Clayton*, 2020 WL 7268585, at *1 (quoting *Padron*, 2019 WL 1548637, at *3) (citing *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010)). It is undisputed that Lowe was a business invitee. "[G]enerally, a property owner owes invitees a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition about which the property owner knew or should have known." *Id.* (quoting *Padron*, 2019 WL 1548637, at *3) (alteration in original) (quoting *Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476, 481 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015) ("A landowner has a duty to exercise reasonable care to make the premises safe for invitees.")). "A premises owner's duty toward its invitee does not, however, make the owner an insurer of the invitee's safety." *Id.* (quoting *Padron*, 2019 WL 1548637, at *3) (quoting *Austin*, 465 S.W.3d at 203; *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998)). "Applying the general rule, the Texas Supreme Court 'has repeatedly described a landowner's duty as a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not.'" *Id.* (quoting *Padron*, 2019 WL 1548637, at *4) (quoting *Austin*, 465 S.W.3d at 203).

Here, for Brookshire to be liable for Lowe's injury, Lowe had to prove

(1) that [Brookshire] had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to [Lowe]; (3) that [Brookshire] did not exercise reasonable care to reduce or to eliminate the risk; and (4) that [Brookshire's] failure to use such care proximately caused [Lowe's] personal injuries.

4

*Id.* at *2 (quoting *Padron*, 2019 WL 1548637, at *3 (quoting *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471–72 (Tex. 2017) (quoting *Corbin v. Safeway Stores*, *Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)))).

*(2)    The Summary Judgment Evidence*

Brookshire's summary judgment motions and Lowe's response both relied on Lowe's deposition and the deposition of Coty Hall, an assistant store manager. Ahead of her deposition, Lowe produced photographs of Brookshire's parking lot, which showed several cracks in the asphalt. Lowe testified, however, that she did not take the photographs of the parking lot and could not identify the portion of the parking lot where she fell in any of the photographs. Lowe circled a crack in one of the photographs and claimed that, while it was not the crack she "fell on," it was similar to it.

In describing the incident, Lowe testified she was looking forward and walking toward the store while wearing flip flops when she tripped over a crack that "wasn't visible" because the color of the pavement was all the same.[1] Lowe, who had landed on her left hip, looked back to see that her right flip flop had come off and "stayed where [she] had tripped." When asked if a part of the crack was sunken in, Lowe answered, "Yes . . . . [T]he part closest to my shoe was sunken in, and the other side was kind of lifted up. Not—not real high, but it was lifted up higher." Lowe clarified that her flip flop was not stuck in the crack, but was "right there by the crack" and that it "wasn't, like, standing up." Lowe said she "probably" would have seen the

---

[1]Although Lowe also used the term "broken asphalt," she clarified that the condition that allegedly caused her fall "was a crack."

5

crack if she had been looking down. An unidentified man helped her stand up, and she went back to her car.

Hall testified that he first learned of Lowe's accident hours later when Lowe's daughter reported it to him. Pursuant to Brookshire's policy, Hall filled out an incident report. Hall said that areas in a parking lot that were sunken in and not level could be unsafe depending on the depth of the abnormality. Yet, according to Hall, the parking lot had normal wear and tear and was "not any . . . worse than any other parking lot." As a result, Hall testified that cracks in a parking lot were normal.

As for Brookshire's safety procedures, Hall testified that employees were trained to report dangerous conditions to managers, who were required to fill out reports of any such condition. He added that Brookshire conducted a self-safety audit every month and had general maintenance schedules and that he would have reported any dangerous condition in the parking lot. Even so, Hall testified that no reports of dangerous conditions were made. According to Hall, the parking lot was already on a list to "have a facelift" and get redone, along with other Brookshire parking lots in different cities.

In addition to deposition testimony, Brookshire relied on Lowe's discovery responses and the affidavit of Rodney Reece, the store director since 2010. Lowe's discovery responses established that there were no witnesses to her fall and that she had no expert testimony to support her claims. Reece swore that there were no reported falls in the parking lot since his tenure, other than Lowe's fall. Reece had "full operational responsibility over the store" and "was not aware of any dangerous condition in the parking lot."

6

In response to Brookshire's summary judgment evidence, Lowe pointed to the photographs of other areas of Brookshire's parking lot and relied on Brookshire's discovery responses, which (1) represented that "[t]he parking lot is inspected multiple times per day by management staff as well as employees whose duties call for them to be in the parking lot" and (2) admitted "that there was normal wear and tear due to vehicular traffic and exposure to weather that led to cracks in the asphalt."

After hearing the parties' motions and considering the evidence attached to them, the trial court granted Brookshire's traditional and no-evidence summary judgment motions.

*(3)*      *Lowe Presented No Evidence of an Unreasonably Dangerous Condition*

Lowe argues that there are genuine issues of material fact concerning whether Brookshire had actual or constructive knowledge of a crack in the parking lot that posed an unreasonable risk of harm. We find that she failed to introduce evidence showing that a crack posed an unreasonable risk of harm.

The "mere fact that [a plaintiff] slipped does not, by itself, prove that the condition of [a surface] posed a foreseeable, unreasonable risk of harm." *Ogueri v. Tex. S. Univ.*, No. 01-10-00228-CV, 2011 WL 1233568, at *5 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.); *see Said v. Sugar Creek Country Club, Inc.*, No. 14-17-00079-CV, 2018 WL 4177859, at *5 (Tex. App.—Houston [14th Dist.] Aug. 31, 2018, pet. ref'd) (mem. op.). "A condition poses an unreasonable risk of harm for purposes of premises liability when there is a 'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *Tex. Dep't of Transp. v. Padron*, 591

S.W.3d 684, 697 (Tex. App.—Texarkana 2019, pet. denied) (quoting *City of Killeen v. Cheney*, No. 03-18-00139-CV, 2018 WL 5832088, at \*6 (Tex. App.—Austin Nov. 8, 2018, no pet.) (mem. op.) (quoting *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002))). "When determining whether a harmful event resulting from a condition was probable and foreseeable, courts often have considered, among other things:

> (1) whether the condition was clearly marked, (2) the height of the condition, (3) whether injuries had occurred in the past, (4) whether other invitees had complained about the condition, (5) whether the condition was unusual, (6) whether the construction or placement of the condition would serve as a warning that the object presented a prohibited degree of danger, (7) whether the invitee had reasonable alternatives other than to go through the area where the condition was located, and (8) whether the condition met applicable safety standards.

*Valentine v. ASA Holdings Real Est. Mgmt.*, No. 09-18-00447-CV, 2020 WL 1173703, at \*5 (Tex. App.—Beaumont Mar. 12, 2020, no pet.) (mem. op.) (citing *Martin v. Chick-Fil-A*, No. 14-13-00025-CV, 2014 WL 465851, at \*4 (Tex. App.—Houston [14th Dist.] Feb. 4, 2014, no pet.) (mem. op.)). "A condition will not be deemed unreasonably dangerous simply because it is not foolproof." *Said*, 2018 WL 4177859, at \*3.

Lowe testified that the crack she tripped over was not clearly marked, pointed to a similar crack, and said that "the part closest to [her] shoe was sunken in, and the other side was kind of lifted up."[2] Yet, while Lowe said she "fell on," "tripped over," or "tripped on" the crack, she did not testify that the crack was in such condition that she fell "in" it. Instead, she said that her flip flop "stayed where [she] had tripped" and that she found her flip flop "right there by the crack."

---

[2]Lowe did not testify that she fell in or on any sunken or elevated area. It is also unclear whether "the other side" in this portion of her testimony referred generally to a part of the crack she may or may not have encountered, or whether she was referring to her flipflop.

Citing to *Cohen v. Landry's Inc.*, Lowe argues that her testimony established an unidentified difference in elevation, which met her burden to produce more than a scintilla of evidence of an unreasonably dangerous condition. *Cohen v. Landry's Inc.*, 442 S.W.3d 818, 821 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). However, *Cohen* is easily distinguished because the condition in which the plaintiff fell was established and described as a "1/2 to 1 inch elevation between two abutting sections of sidewalk." *Id.* Here, there is no evidence as to the height of the changed elevation of the unidentified parking lot crack and there were no photographs of the portion of the parking lot where Lowe tripped. *Id.* Also, while Lowe admitted she probably would have seen the crack were she looking down, Cohen presented expert testimony that "the height of the condition, although a small elevation difference in the sidewalk, was significant because it was difficult to see," "creat[ed] a significant trip and fall hazard," and "present[ed] a serious and unreasonable risk of pedestrian missteps and falls." *Id.* at 826. No such testimony, expert or otherwise, was presented here. Also, Cohen presented evidence of safety standards and expert testimony showing that the sidewalk where Cohen tripped did not meet those standards. Here, there was no evidence of parking lot safety standards before the trial court and nothing showing that the parking lot did not meet any applicable standards.[3] As a result, this case is not analogous to *Cohen*.

---

[3]In her brief, Lowe relies on arguments and material not presented to the trial court. "In summary judgment practice, '[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.'" *Fitts v. Richards-Smith*, No. 06-15-00017-CV, 2016 WL 626220, at *14 (Tex. App.—Texarkana Feb. 17, 2016, pet denied) (mem. op.) (citing TEX. R. CIV. P. 166a(c); TEX. R. APP. P. 33.1(a)(1); *D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)).

Rather, this case is akin to *Dietz v. Hill Country Restaurants, Inc.*, 398 S.W.3d 761, 767 (Tex. App.—San Antonio 2011, no pet.). There, Dietz fell on an aggregate walkway that was more than eighteen years old. *Id.* The walkway contained five depressions, described as "'bootprints'. . . that measured in depth from 0.366 to 0.576 inches." *Id.* Dietz stated that "she stepped into one of the 'holes' in the walkway, which 'threw' her off balance and caused her to fall." *Id.* The San Antonio Court of Appeals determined that, in light of evidence that no one else had ever fallen as a result of the walkway or had complained that it was unsafe, the circumstances of Dietz's fall created "no more than a mere surmise or suspicion of an unreasonable risk of harm." *Id.*

To succeed, Lowe had to present more than a scintilla of evidence that the crack created a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen." *Padron*, 591 S.W.3d at 697. Lowe made no argument as to whether the construction or placement of the condition would serve as a warning that the crack presented the prohibited degree of danger. There was no photograph of the crack, no evidence of a separation in the crack, and no testimony establishing the size of a height difference in the pavement. [4] While there was evidence that the parking lot was on a list of parking lots that would receive a "facelift," there was no evidence that the decision to redo the parking lot was based on any dangerous condition, much less an unreasonably dangerous one. Hall and Reece both said that no one else suffered injuries in the parking lot and that no one had complained about its condition since their employment. Brookshire employees testified that, while the parking lot had

---

[4]The photograph of a crack that Lowe described as similar to the one she tripped on did not clearly depict any separation in the crack, broken asphalt, or change in elevation.

10

ordinary and normal cracks due to normal wear and tear, there was nothing in the parking lot that could be described as unusual or unreasonably dangerous. *See Huy v. Trejo*, No. 05-17-01356-CV, 2018 WL 4214700, at *3 (Tex. App.—Dallas Sept. 5, 2018, no pet.) (mem. op.) (finding no evidence of an unreasonably dangerous condition where, among other things, "the cracks in the pavement were not of a size that [defendant] would repair, but were instead 'normal' cracks"). Because Lowe did not introduce evidence as to the size of the crack, whether she had a reasonable alternative route to the store could not be measured. Also, Lowe introduced no evidence of whether the crack failed to meet safety standards. As in *Dietz*, the fact of Lowe's own accident created "no more than . . . a mere surmise or suspicion of an unreasonable risk of harm." *Dietz*, 398 S.W.3d at 767; *see Valentine*, 2020 WL 1173703, at *6 (upholding a no-evidence summary judgment in a case where plaintiff fell on "unstable," unattached, flush concrete that "shift[ed] back and forth" because she "produced no evidence about how long the condition had existed, whether it had caused prior injuries or falls, whether the condition was unusual, whether the condition presented a prohibited degree of danger, whether [she] had reasonable alternatives other than to go through the area where the condition was located, and whether the condition met applicable safety standards"); *Said*, 2018 WL 4177859, at *5.

Because we find that Lowe presented no more than a scintilla of evidence that the crack involved in the incident posed an unreasonable risk of harm, we affirm the trial court's summary judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     March 24, 2021
Date Decided:      April 27, 2021