ACCEPTED
01-15-00331-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/23/2015 3:26:30 PM
CHRISTOPHER PRINE
CLERK

## No. 01-15-00331-CV

IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/23/2015 3:26:30 PM
CHRISTOPHER A. PRINE
Clerk

MARIA RESENDIZ

*Plaintiff, Appellant,*

v.

SELLERS BROS., INC.,

*Defendant, Appellee.*

On Appeal from the County Civil Court At Law Number 1 of Harris County, Texas
Trial Court Cause No. 1046397

## BRIEF OF APPELLEE

TEKELL, BOOK, ALLEN
& MORRIS, L.L.P.
William C. Book
State Bar No. 02622000
wb@tekellbook.com
1221 McKinney, Suite 4300
Houston, TX 77010
(713) 222-9542
(713) 655-7727 (Fax)

ATTORNEY FOR APPELLEE,
SELLERS BROS., INC.

## *Oral Argument Requested*

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:     Maria Resendiz

COUNSEL:     Mr. Jack Todd Ivey
State Bar No.: 00785985
Mr. Jacob Barber
State Bar No.: 24076258
Ivey Law Firm, P.C.
11111 Katy Freeway, Suite 580
Houston, Texas 77079
713-225-0015
713-225-5313 (Fax)

APPELLEE:     Sellers Bros., Inc.

COUNSEL:     Mr. William C. Book
State Bar No.: 02622000
Tekell, Book, Allen & Morris, L.L.P.
1221 McKinney St., Suite 4300
Houston, Texas 77010
713-222-9542
713-655-7727 (Fax)

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL. ................................................................ ..ii

TABLE OF CONTENTS.................................................................................iii

INDEX OF AUTHORITIES.......................................................................... .v

STATEMENT OF THE CASE.................................................................1

ISSUE PRESENTED...........................................................................1

STATEMENT OF THE FACTS.................................................................1

SUMMARY OF THE ARGUMENT..............................................................7

ARGUMENT AND AUTHORITIES................................................................8

I.  Standard of Review...........................................................................8

    A.  Traditional Summary Judgment.......................................................8

    B.  No-Evidence Summary Judgment.....................................................9

II. Premises Liability............................................................................10

    A.  Traditional Motion for Summary Judgment............................................11

        1. Standard for determining the existence of a legal duty.............11

        2. Sellers Bros. had no duty because Resendiz's incident
           was not foreseeable as a matter of law...............................12

        3. Sellers Bros also had no duty to warn Resendiz because
           the alleged mat and or extension cord cover was not a
           hidden danger.........................................................14

**4. Sellers Bros. negated one if not all of the essential elements of Resendiz's cause of action**................................15

    a.    The alleged mat and/or extension cord cover did not present an unreasonable risk of harm as a matter of law........................................15

        i.    Resendiz's incident is not evidence of an unreasonably dangerous condition......................16

        ii.    The evidence establishes that the condition of the extension cord cover and/or alleged mat did not create an unreasonable risk of harm.........17

        iii.    Resendiz's reliance on the *Cohen v. Landry's Inc.* case is distinguishable......................................19

        iv.    Resendiz's reliance on *Cohen*'s expert's assertions of possible violations of various safety standards is misguided and simply inapplicable to this case....20

    b.    Sellers Bros. had no notice that any alleged mat or the extension cord cover was an unreasonably dangerous condition................................22

    c.    Sellers Bros. acted reasonably to make the premises safe as a matter of law................................24

B.    No Evidence Motion for Summary Judgment........................25

CONCLUSION AND PRAYER FOR RELIEF................................27

CERTIFICATE OF SERVICE................................29

iv

# INDEX OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Binur v. Jacobo,*
    135 S.W.3d 646 (Tex. 2004)...........................................................8

*Bowman v. Brookshire Grocery Co.,*
    317 S.W.3d 500 (Tex. App.–Tyler
    2010, pet. denied)......................................................................17

*Brinson Ford, Inc. v. Alger,*
    228 S.W.3d 161 (Tex. 2007)....................................................17, 23

*Cartwright v. Pinnacle Entm't, Inc.,*
    09-10-00035-CV, 2011 WL 193495 (Tex. App.–Beaumont
    Jan. 20, 2011, no pet.)................................................................17

*Cont'l Coffee Prods. Co. v. Cazarez,*
    937 S.W.2d 444, 450 (Tex. 1996)................................................8

*Centeq Realty, Inc. v. Siegler,*
    899 S.W.2d 195 (Tex. 1995).......................................................11

*City of Keller v. Wilson,*
    168 S.W.3d 802 (Tex. 2005).......................................................10

*Cohen v. Landry's Inc.,*
    442 S.W.3d 818 (Tex. App.—Houston
    [14th Dist.] 2014), *review denied* (June 5, 2015)............19, 20, 21

*Corbin v. Safeway Stores, Inc.,*
    648 S.W.2d 292 (Tex. 1983).......................................................11

*CMH Homes, Inc. v. Daenen,*
    15 S.W.3d 97 (Tex. 2000)..........................................................16

*Dabney v. Wexler-McCoy, Inc.,*
    953 S.W.2d 533 (Tex. App.–Texarkana
    1997, pet. denied).....................................................................16

*Del Lago Partners v. Smith,*
    307 S.W.3d 762 (Tex. 2010)..................................................11

*El Chico Corp. v. Poole,*
    732 S.W.2d 306 (Tex. 1987)..................................................11

*FM Props. Operating Co.v. City of Austin,*
    22 S.W.3d 868 (Tex. 2000)....................................................8

*Fort Brown Villas III Condo Ass'n v. Gillenwater,*
    285 S.W.3d 879 (Tex. 2009)..................................................11

*Goodyear Tire & Rubber Co. v. Mayes,*
    236 S.W.3d 754 (Tex. 2007)....................................................9

*Greater Houston Transp. Co. v. Phillips,*
    801 S.W.2d 523 (Tex. 1990)............................................12, 13, 16

*Keech v. Kroger,*
    845 S.W.2d 262 (Tex. 1992)..................................................15

*Lake Charles Harbor & Terminal Dist. v.*
    *Bd. of Trustees of the Galveston Wharves,*
    62 S.W.3d 237 (Tex. App.—Houston
    [14th Dist.] 2001, pet. denied).................................................10

*Lefmark Mgmt. Co. v. Old,*
    946 S.W.2d 52 (Tex. 1997)..........................................11, 14, 24

*Lear Siegler, Inc. v. Perez,*
    819 S.W.2d 470 (Tex. 1991).....................................................9

*Lofton v. Marmaxx Operating Corp.,*
    01-06-01109-CV, 2008 WL 525678 (Tex. App.—Houston
    [1st Dist.] Feb. 28, 2008, no pet.)............................................18

*Missouri Pac. R. Co. v. Am. Statesman,*
    552 S.W.2d 99 (Tex. 1977)..............................................11, 13

*Motel 6 G.P., Inc. v. Lopez,*
    929 S.W.2d 1 (Tex. 1996)..................................................24

*Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.,*
    821 S.W.2d 283 (Tex.App.—Houston
    [1st Dist.] 1991), *writ denied* (Apr. 1, 1992)..........................9

*Rosas v. Buddie's Food Store,*
    518 S.W.2d 534, 536 (Tex. 1975)........................................10

*Schaefer v. Texas Emp. Ins. Ass'n,*
    612 S.W.2d 199 (Tex. 1980)............................................27

*Seideneck v. Cal Bayreuther Assoc.,*
    451 S.W.2d 752 (Tex. 1970)............................................15

*Sw. Elec. Power Co. v. Grant,*
    73 S.W.3d 211 (Tex. 2002)..............................................8

*Thoreson v. Thompson,*
    431 S.W.2d 341 (Tex. 1968)............................................16

*Wal-Mart Stores, Inc. v. Gonzalez,*
    968 S.W.2d 934, 937 (Tex. 1998)......................................27

*Wal-Mart Stores, Inc. v. Spates,*
    186 S.W.3d 566 (Tex. 2006)..........................................9, 10

*Walker v. Harris,*
    924 S.W.2d 375 (Tex. 1996)............................................11

*Wyatt v. Furr's Supermarkets, Inc.,*
    908 S.W.2d 266 (Tex. App.–El Paso
    1995, writ denied)...................................................15, 16

**RULES**

Americans with Disabilities Act of 1990.
    Pub. L. 101-336, ch. 4 § 4.5.2, 104 Stat. 328 (1994)

(to be codified at 28 § C.F.R. pt. 36, app. A.)................................21, 22

Int'l Bldg. Code, ch. 10 § 1002.1 (2003)..............................................21

Int'l Fire Code, ch. 10 § 1002.1 (2003)............................................21

TEX. R. CIV. P. 166a .................................................8, 9, 10, 27

**OTHER AUTHORITIES**

American National Standards Institute,
American National Standard for Accessible and
Usable Buildings and Facilities,
ICC/ANSI A117.1 ch. 3 § 303.3 (2003).........................................21, 22

Texas Accessibility Standard
ch. 4.5 § 4.5.2 (1994)...............................................................21, 22

## STATEMENT OF THE CASE

Resendiz sought personal injury damages when she filed her petition on April 17, 2014, alleging a garden variety *slip* and fall lawsuit which occurred on Sellers Bros.' premises. (Court's Record ("CR") 4-8). On March 11, 2015, Sellers Bros. filed a Traditional and a No-Evidence Motion for Summary Judgment. (CR 19-124). After considering Sellers Bros.' Motions for Summary Judgment, Resendiz's Response, and oral arguments by both parties at the summary judgment hearing, the trial court granted Sellers Bros.' Motions for Summary Judgment. (CR 159-160).

## ISSUE PRESENTED

Whether the trial court was correct in granting summary judgment.

## STATEMENT OF THE FACTS

Resendiz alleges in her Original Petition that she "*slipped* and fell due to a dangerous condition on the floor." (CR 6 at ¶ 9) (emphasis added) (current and live pleading). Subsequently, Plaintiff responded and answered to Request for Disclosures and Interrogatories that she "*slipped* and fell" (CR 52 at (c), and CR 61 at Answer # 6) (emphasis added). Further, in an answer to Interrogatory, Resendiz described a foreign substance she stepped in or fell in as being "Inside store" and "Medium size" and the depth was "Unknown." (CR 62 at Answer # 10). Resendiz also testified in her answer to Interrogatory that "Plaintiff did not see the *foreign*

1

*substance* before she fell." (CR 63 at Answer # 15) (emphasis added). However, several months after filing her Petition and answering and responding to written discovery, Resendiz seemingly changed her story and testified in her deposition that she *tripped* on a mat and/or extension cord cover. (CR 80-81 at 38:16-39:5, and CR 82 at 40:9-25).

### The Incident

Resendiz was a customer of Sellers Bros.' store at 1202 Uvalde Road, Houston, Texas 77015 on April 20, 2012 when the incident occurred. (CR 6 at ¶ 9). She had been shopping for groceries with her sister-in-law that day. (CR 78 at 35:2-9). Resendiz checked-out and paid for her groceries in the Express Line. *Id.* When she was done paying, Resendiz left her groceries at the Express Line and walked over to another cash register to where her sister-in-law was standing. *Id.* While walking towards her sister-in-law, Resendiz walked between cash registers over the permanent extension cord cover and alleged mat in question without incident. *Id.* Resendiz then handed her sister-in-law some change and then turned to go back to the Express Line to retrieve her own groceries. (CR 79 at 37:13-18; CR 82 at 40:2-25; CR 83 at 46:17-19). It was when she turned and began to walk back to the Express Line after handing her sister-in-law the change that she tripped on an alleged mat and/or the permanent extensions cord cover that is screwed tightly into the floor of the store. (CR 79 at 37:13-18; CR 82 at 40:2-25; CR 83 at

2

46:17-19; First Supplemental Court Record ("FSCR") 6-24 (color photos); CR 97-100 at ¶ 15). The extension cord cover connects electricity to the cash register and nearby refrigerator display. (FSCR 6-24 (color photos); CR 97-100 at ¶ 17).

Resendiz testified that she does not know exactly what she tripped on. (CR 83 at 46:17-23). She testified that she does not know how big the mat or alleged extension cord cover was. (CR 80 at 38:2-15). She testified that she did not see the extension cord cover or alleged mat either time she walked over it. (CR 81 at 39:6-13; CR 85 at 48:18-21; CR 89 at 54:5-13; CR 92 at 64:18-22). She testified that she does not remember which foot caused her to trip. (CR 86 at 50:20-22). She testified that she saw nothing wrong with the alleged mat and/or extension cord cover. (CR 83-85 at 46:24 - 48:17). She saw no humps, no lumps, nothing was sticking up, nothing was folded up. (CR 84-85 at 47:4 - 48:17). The Express Line cashier and assistant manager came to her attention to assist her after the fall. (CR 87-88 at 52:19 - 53:18). After several minutes, Resendiz left the store with her sister-in-law and went home. (CR 90-91 at 56:22-57:1). Resendiz came back to the store six days later on April 26, 2012 to speak to the main manager and report the incident. (CR 102).

### Resendiz

Resendiz testified that she had been shopping at this store approximately once a week for several years prior to her incident. (CR 70 at 8:15-21; CR 71 at

3

10:1-5). Resendiz had been to this store "many" times and had been in this general area of the store "many" times prior to her incident. (CR 73 at 29:16-23). She was very familiar with this store. When she shopped at this Sellers Bros. store, she did not pay attention to the floor. (CR 72 at 28:23-24). In all of her times of shopping at Sellers Bros., she testified she never felt unsafe, never felt the store was dangerous, and had never tripped or slipped or fallen in a Sellers Bros. store before. (CR 73-76 at 29:8 - 32:4). She testified that she had never tripped and fallen from this extension cord cover before. (CR 73-74 at 29:24 - 30:3). She testified that she has never known of anyone to trip or slip in a Sellers Bros. store and had never known of any incidents involving this extension cord cover. (CR 73-76 at 29:8 - 32:4). Resendiz acknowledged that she was not aware of any evidence that Sellers Bros. was told that there was anything wrong with the extension cord cover and/or alleged mat. (CR 74-76 at 30:2 – 32:4; CR 77 at 33:16-25).

### Sellers Bros.' Inspection Procedures

At the time of the incident, Sellers Bros. had a safety inspection program which had been in place since this store opened on December 16, 1982. (CR 97-10 at ¶ 9). The manager inspected the property daily identifying safety, maintenance, security, and aesthetic concerns at the property. *Id.* These inspections included identifying potential defects or hazards at the property. *Id.* These inspections

4

included looking at the floor and the extension cord cover where Resendiz claims she tripped. *Id.* In addition, Sellers Bros. had a floor inspection program which had been in place since this store opened on December 16, 1982. (*Id.* at ¶ 10). The floor inspectors inspected the store hourly identifying safety, maintenance, security and aesthetic concerns on the property and identified defects or hazards with the store's floor. (CR 97-10 at ¶ 10; CR 104). Their inspections included looking at the floor and the extension cord cover where Resendiz claims she tripped. *Id.*

### Sellers Bros.' Grocery Store

This store has been open for 33 years since 1982. (CR 97-10 at ¶ 4). Since its opening, until the date of Resendiz's incident, there have been approximately 24 million patrons that have visited this store. (*Id.* at ¶ 5). Never in this store's history, nor in the history of any of the other Sellers Bros. stores, has anyone ever complained of tripping on the extension cord covers that are common near many of the Sellers Bros. cash registers. (*Id.* at ¶¶ 7, 11). No one has ever complained that the extension cord covers were dangerous or posed a hazardous condition. *Id.* Throughout the years of service and the millions upon millions of customers that walked through Sellers Bros.' stores, there has simply never been an incident involving an extension cord cover, and more precisely, not this extension cord cover. *Id.* No one has ever complained that the extension cord cover where Resendiz tripped and fell was unreasonably dangerous or unsafe in any way. *Id.*

5

Sellers Bros. employees were unaware of any unreasonable risk of harm with an alleged mat and/or extension cord cover at issue or any other extensions cord cover prior to Resendiz's incident. (*Id.* at ¶¶ 7, 11, 12).

### *The Extension Cord Cover*

The extension cord cover is a permanent device. It is screwed very tightly into the floor, and throughout its length only sticks up barely more than a 1/4 of inch at its highest point. (*Id.* at ¶ 15; FSCR 6-24). The area where the extension cord cover is located is not a heavily trafficked area by the store's patrons as it is not in an area intended for the patrons. (CR 97-100 at ¶ 16). The extension cord cover is located in an area primarily for shopping carts to be pulled around the cash register by the cashier to the sacking area while the patrons pay form the other side of the cash register. (*Id.* at ¶ 16; FSCR 6-24). The extension cord cover is actually a safety measure and device. (CR 97-100 at ¶ 17). The extension cord cover operates to make the floor and premises more safe by gathering and concealing exposed wires and cords that are necessary to power the cash register and nearby refrigerator display. *Id.* Further the cover prevents loose wires from being a tripping hazard, and protects the wires from the heavy shopping carts. (*Id.*; FSCR 6-24).

6

## SUMMARY OF THE ARGUMENT

The trial court was correct in granting summary judgment in favor of Sellers Bros. There was no genuine issue of fact on one if not all of Resendiz's essential elements of her premises liability cause of action. Sellers Bros. was not negligent for failing to maintain a safe premises. Sellers Bros. did not have actual or constructive knowledge of an unreasonably dangerous condition on Sellers Bros.' property. Sellers Bros. did not fail to act as a reasonably prudent person would have done under same or similar circumstances. There was no unreasonably dangerous condition that existed.

Alternatively, Plaintiff presented no evidence of premises liability negligence. Specifically, there was no evidence that Sellers Bros. was negligent for failing to maintain a safe premises. There was no evidence that an unreasonably dangerous condition existed. There was no evidence that Sellers Bros. had actual or constructive knowledge of an unreasonably dangerous condition on Sellers Bros.' property. There was no evidence that Sellers Bros. failed to exercise reasonable care to reduce or eliminate a risk posed by an unreasonably dangerous condition. There was no evidence that Sellers Bros. acts or omissions, if any, caused Resendiz's accident and injuries. There was no evidence that Sellers Bros. failed to act as a reasonably prudent person would have done under same or similar circumstances.

## ARGUMENT AND AUTHORITIES

### I. Standard of Review.

The Texas Supreme Court permits a movant to combine a traditional motion for summary judgment along with its no-evidence motion for summary judgment in one single motion. *Binur v. Jacobo*, 135 S.W.3d 646, 650-51 (Tex. 2004). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, this Court must affirm the summary judgment if any of the independent summary judgment grounds is meritorious. *FM Props. Operating Co.v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When reviewing a legal sufficiency point, the court "must consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences." *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

### A. Traditional Summary Judgment.

To prevail on a traditional motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists, and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a (c). A movant is entitled to summary judgment if they conclusively negate at least one essential element of a cause of action. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Once the movant establishes that no genuine issue of material fact exists regarding

8

an essential element of the plaintiff's claims, the non-movant must present competent summary judgment evidence raising a fact issue on that element. *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 285 (Tex. App.—Houston [1st Dist.] 1991), *writ denied* (Apr. 1, 1992). A defendant moving for summary judgment on the plaintiff's cause of action, assumes the burden of showing as a matter of law the plaintiff has no cause of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). The defendant does not need to disprove all of the elements of the plaintiff's cause of action, only one. *Id.*

**B.   No-Evidence Summary Judgment.**

Under Rule 166a(i) of the Texas Rules of Civil Procedure, a party can move for a no-evidence motion for summary judgment. A no-evidence motion for summary judgment asserts that, after adequate time for discovery has passed, there is legally insufficient evidence of one or more essential elements on which the adverse party has the burden of proof at trial. TEX. R. CIV. P. 166a(i). Once such a motion is filed, the burden shifts to the non-moving party, the Appellant Plaintiff in this case, to present evidence raising an issue of material fact as to the elements specified in the motion. *Id.* Evidence raises an issue of material fact only if "reasonable and fair minded jurors could differ in their conclusions in light of all the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (citing *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568

9

(Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822-824 (Tex. 2005)). The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i). A no-evidence summary judgment is essentially a pre-trial directed verdict, to which the court of appeals applies the same legal sufficiency standard of review. *Lake Charles Harbor & Terminal Dist. v. Bd. of Trustees of the Galveston Wharves*, 62 S.W.3d 237, 241 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A no evidence summary judgment is properly granted if the non-movant fails to produce more than a scintilla of probative evidence raising a genuine issue of fact as to the essential elements challenged for that claim on which the non-movant would have the burden of proof at trial. *Id.*

## II. Premises Liability.

Under Texas law, it is well-settled that the elements for a premises liability claim are: (1) the plaintiff was an invitee[1]; (2) the defendant was a possessor of the premises[2]; (3) a condition on the premises posed an unreasonable risk of harm; (4) the defendant knew or reasonably should have known of the danger; (5) the defendant breached his duty of ordinary care either by failing to adequately warn

---

[1] Here, it is undisputed that Resendiz was an invitee at the time of her alleged accident. An invitee is a person who enters the premises with the possessor's express or implied knowledge and for the parties' mutual benefit. *Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 536 (Tex. 1975). As a returning customer of Sellers Bros.' store, Plaintiff certainly was an invitee.

[2] It is also undisputed that Defendant Sellers Bros. is the possessor of the premises.

10

of the condition or make the condition reasonably safe; and (6) the defendant's breach proximately caused the plaintiff's injury. *Del Lago Partners v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010); *Fort Brown Villas III Condo Ass'n v. Gillenwater*, 285 S.W.3d 879, 883 (Tex. 2009).

## A. Traditional Motion for Summary Judgment.

Tort liability depends on both the existence of and the violation of a duty. *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The existence of a duty is a question of law for the Court to decide from the facts surrounding the occurrence in question. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

### 1. Standard for determining the existence of a legal duty.

The question of duty turns on foreseeability of harmful consequences, which is the underlying basis for negligence. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983). Conversely, if an incident was not foreseeable, no duty arises. Foreseeability of the risk is "the foremost and dominant consideration". *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). Foreseeability means that a person of ordinary intelligence would have anticipated the dangers that his negligent act created for others. *Missouri Pac. R. Co. v. Am. Statesman*, 552 S.W.2d 99, 103 (Tex. 1977).

11

## 2. Sellers Bros. had no duty because Resendiz's incident was not foreseeable as a matter of law.

None of the millions of customers at this Sellers Bros. store before Resendiz's incident had ever tripped on the extension cord cover in question that Sellers Bros. was aware of. (CR 97-100 at ¶¶ 7, 11). None of the millions of customers at this Sellers Bros. store before Resendiz's incident had ever tripped on any similar extension cord cover near the other cash registers that Sellers Bros. was aware of. (*Id.* at ¶ 7). Further, the area was intended and predominantly used by the cashiers to bring the shopping carts around the registers. (*Id.* at ¶ 16; FSCR 6-24 (color photos)). This was not an area frequented by patrons. (*Id.* and *Id.*). Moreover, no employee, agent and representative of Sellers Bros. was aware of any danger presented by the extension cord cover or an alleged mat in the area. (CR 97-100 at ¶¶ 11, 12). Accordingly, Resendiz's incident was not foreseeable to Sellers Bros as a matter of law. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). There is no genuine issue of fact raised that Sellers Bros. could have foreseen a patron tripping and falling on the extension cord cover or an alleged mat in the area.

In *Greater Houston Transp. Co.*, a man was shot by a Yellow Cab driver after an altercation. *Id.* at 524. Plaintiff attempted to hold Yellow Cab responsible, claiming the shooting was foreseeable. *Id.* The records showed that

12

Yellow Cab had been operating in the City of Houston for twenty years and, in a given year, it was involved in approximately 100 traffic accidents. *Id.* at 526. During this period, there was only one prior incident involving the use of a weapon by a driver. *Id.* The Texas Supreme Court held, based upon that evidence, the incident was not foreseeable as a matter of law and Yellow Cab had no duty to plaintiff. *Id.* at 527. The evidence in this case is even more compelling. Despite millions of customers over 20 to 30 years, not one customer had ever tripped and fell from the extension cord cover that Resendiz claims caused her incident. (CR 97-100 at ¶¶ 6, 7). Nor had any customer ever tripped and fell from an alleged mat located in the area of the extension cord cover. (*Id.* at ¶ 8). Based on these facts, no person of reasonable intelligence would have anticipated the extension cord cover being dangerous. *Missouri Pac. R. Co. v. Am.Statesman*, 552 S.W.2d at 103.

Under the Texas Supreme Court's holding in *Greater Houston Transp. Co.*, Resendiz's incident was not foreseeable to Sellers Bros. as a matter of law. 801 S.W.2d at 525. Because the incident was not foreseeable, Sellers Bros. had no duty to Resendiz. *Id.* In the absence of a duty, Sellers Bros. was properly granted judgment as a matter of law.

**3. Sellers Bros. also had no duty to warn Resendiz because the alleged mat and or extension cord cover was not a hidden danger.**

A duty only arises for a property possessor only if there is a known hidden danger that presents an unreasonable risk of harm. *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997). The extension cord cover and/or alleged mat that Resendiz claims caused her incident was a standard extension cord cover and/or standard mat. Resendiz testified that there was nothing wrong with the extension cord and/or alleged mat. (CR 84-85 at 47:4 - 48:17). Resendiz had walked over the cover and/or alleged mat immediately prior to her fall without any difficulty or incident. (CR 78 at 35:2-9). She was very familiar with that area of the store. She had notice of the existence of the extension cord cover and/or alleged mat, and did not notice any problems; therefore, there was no hidden danger. (CR 78 at 35:2-9; CR 79 at 37:13-18; CR 82 at 40:2-25; CR 83 at 46:17-19). Moreover, no customer had reported any problems with the extension cord cover and/or alleged mat; therefore, there was no known hidden danger as a matter of law. (CR 97-100 at ¶¶ 7, 8, 11, 12; CR 74-76 at 30:2 – 32:4; CR 77 at 33:16-25). In the absence of a hidden danger, there is no duty, and Seller Bros. was properly granted judgment as a matter of law.

14

### 4. Sellers Bros. negated one if not all of the essential elements of Resendiz's cause of action.

The trial court properly found that Sellers Bros. was able to negate one if not all of the essential elements of Resendiz's cause of action. Mainly, (1) there was no unreasonably dangerous condition on Sellers Bros. property that caused the accident; (2) Sellers Bros. had no notice of an unreasonably dangerous condition prior to the incident; and (3) Sellers Bros. exercised reasonable care to reduce and eliminate risk at the property.

### a. The alleged mat and/or the extension cord cover did not present an unreasonable risk of harm as a matter of law.

An essential element of a premises liability cause of action is that the condition must pose an unreasonable risk of harm. *Keech v. Kroger*, 845 S.W.2d 262, 264-66 (Tex. 1992). A mat or extension cord cover is not an unreasonable risk of harm. A condition presents an unreasonable risk of harm if there is such a probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen. *Wyatt v. Furr's Supermarkets, Inc.*, 908 S.W.2d 266, 269 (Tex. App.–El Paso 1995), *writ denied* (April. 4, 1996) (citing *Seideneck v. Cal Bayreuther Assoc.*, 451 S.W.2d 752, 754 (Tex. 1970)). Because not one of the millions of customers at Sellers Bros. had ever tripped or complained of the extension cord cover in question and/or an alleged mat in the same area prior to Resendiz's incident, there was little or no

15

possibility that a harmful event would occur. (CR 97-100 at ¶¶ 7, 8, 11, and 12; CR 74-76 at 30:2 – 32:4; CR 77 at 33:16-25). A mere possibility of a harmful event does not rise to the required level of "such probability". *Wyatt v. Furr's Supermarkets, Inc.,* at 266. Furthermore, no employee, agent or representative of Sellers Bros was aware of any probability of a harmful event occurring that was presented to its customers by the extension cord cover and/or alleged mat in the area. (CR 97-100 at ¶¶ 7, 8, 11, and 12). Resendiz's incident was not foreseeable as a matter of law. *Greater Houston Transp. Co.,* 801 S.W.2d 523, 525 (Tex. 1990). The Court should find that the alleged mat and/or extension cord cover was not an unreasonably dangerous condition as a matter of law, because the required "probability that a harmful event could occur" was not present and the accident was not foreseeable.

### i. Resendiz's incident is not evidence of an unreasonably dangerous condition.

Resendiz's testimony only shows that she alleges to have tripped on an alleged mat and/or extension cord cover. The mere happening of an accident is not, of itself, evidence that there was an unreasonable risk of such an occurrence. *Dabney v. Wexler-McCoy, Inc.,* 953 S.W.2d 533, 537 (Tex. App.–Texarkana 1997, pet. denied) (citing *Thoreson v. Thompson,* 431 S.W.2d 341, 344 (Tex. 1968)). Nor is a premises owner or occupier strictly liable for conditions that result in injury. *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 101 (Tex. 2000). "The duty a

16

premises owner owes its invitees is not that of an insurer. That is to say, a condition is not unreasonably dangerous simply because it is not foolproof. A condition is unreasonably dangerous if it presents an unreasonable risk of harm." *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162–63 (Tex. 2007) (internal citations omitted). Here, Resendiz presents no evidence that the condition of an alleged mat or extension cord cover was inherently dangerous.

### ii. The evidence establishes that the condition of the extension cord cover and/or alleged mat did not create an unreasonable risk of harm.

Under Texas law, a mat or extension cord cover is not a condition that poses an unreasonable risk of harm; rather, it is the condition and/or manner of its display that may create an unreasonable risk of harm. *Bowman v. Brookshire Grocery Co.*, 317 S.W.3d 500, 504 (Tex. App.–Tyler 2010, pet. denied). In *Bowman*, Plaintiff shopper tripped on a floor mat near the store exit and fell. *Id.* at 501. The court concluded that the condition of the mat such as its "ruffled" edges was what created the unreasonable risk of harm, and not simply the existence of a floor mat itself. *Id.* at 504; *see also Cartwright v. Pinnacle Entm't, Inc.*, 09-10-00035-CV, 2011 WL 193495 at *7 (Tex. App.–Beaumont Jan. 20, 2011, no pet.) (mem. op.) ("the question we must answer is whether Cartwright presented evidence that the mat itself, i.e., the manner of its display, was a problem creating a frequent risk of injury, and if not, whether Pinnacle was aware or should have been aware of the

17

specific wrinkle in the mat that allegedly caused Cartwright to fall."); *Lofton v. Marmaxx Operating Corp.*, 01-06-01109-CV, 2008 WL 525678 at *3 (Tex. App.—Houston [1st Dist.] Feb. 28, 2008, no pet.) (mem. op.).

Similarly, in *Lofton* a customer sustained injuries when she tripped on the floor mat in front of the exit of the store. *Id.* at 1. This Court concluded that the store's knowledge that it had placed a floor mat in a particular location is not knowledge that the floor mat presented a hazard. *Id.* at 3. The Plaintiff in *Lofton* presented no evidence that anyone had previously tripped on the mat, that the mat had any defects, that the type of mat was unusual, or that its particular construction and placement should have suggested to the store that it presented a prohibitive degree of danger. *Id.* Therefore, it was determined that there was no evidence that the mat presented an unreasonable risk of harm. *Id.*

Similarly, Resendiz has no evidence that any alleged mat or the permanent extension cord cover was unreasonably dangerous or defective in the manner in which it was laying and/or that the condition of a mat or the extension cord cover posed an unreasonable risk of harm. In fact, she testified that she saw nothing wrong with the alleged mat and/or extension cord cover. (CR 83-85 at 46:24 - 48:17). She saw no humps, no lumps, nothing was sticking up, nothing was folded up. (CR 84-85 at 47:4 - 48:17). Further, the permanent extension cord cover is actually a reasonable safety measure and does not present an unreasonably

18

dangerous condition. (CR 97-100 at ¶ 17; FSCR 6-24 (color photos)). The extension cord cover is a permanent device and is screwed very tightly into the floor, and throughout its length only sticks up barely more than a 1/4 of an inch at its highest point. (CR 97-100 at ¶ 15; FSCR 6-24 (color photos)). The permanent extension cord cover operates to make the floor and premises more safe by concealing exposed loose wires and cords that are necessary to power the cash register and nearby refrigerator display. (*Id.* at ¶ 17). The cover prevents the wires from being a tripping hazard, and protects the wires from the heavy shopping carts. *Id.*

### iii. Resendiz's reliance on the *Cohen v. Landry's Inc.* case is distinguishable.

Resendiz relies heavily in her appellate brief on the *Cohen v. Landry's Inc.* case for the notion that there is evidence of an unreasonably dangerous risk of harm. 442 S.W.3d 818 (Tex. App.—Houston [14th Dist.] 2014), *review denied* (June 5, 2015). Cohen was a plaintiff that tripped and fell on a raised sidewalk section that led to a driveway of a Landry's restaurant. *Id.* at 821 and 826. Tree root growth underneath the sidewalk had apparently caused a ½ to 1 inch elevation between two concrete sections. *Id.* at 821. Through an expert, Cohen presented evidence that the ½ to 1 inch difference in the sidewalk sections did not meet applicable safety standards. *Id.* at 826-29. Here, at its highest point, Sellers Bros. extension cord cover is barely more than a 1/4 inch tall. (FSCR 20-24.) Resendiz

argues in her appellate brief that an alleged mat "invariably added height" to the extension cord cover. Appellant's Br. 8. However, Resendiz's logic does not take into account that the surrounding floor area on either side of the extension cord cover would also be marginally higher from an alleged mat; and therefore, negate any difference in height a mat added even if an alleged mat was placed over the extension cord cover.

### iv. Resendiz's reliance on *Cohen*'s expert's assertions of possible violations of various safety standards is misguided and simply inapplicable to this case.

Resendiz incorrectly applies certain codes and standards to this incident. Resendiz asserts that "the City of Pearland subscribes to both the International Building Code and International Fire Code." Appellant's Br. 9. This Sellers Bros. store is not located in the City of Pearland. Therefore, Resendiz's application of Pearland codes seemingly do not apply.

Resendiz erroneously relies on the safety standards referenced and cited by Cohen's expert in the *Cohen* case. These safety standards are inapplicable to our circumstances. Cohen's expert refers to portions of the various codes regarding sidewalks, walkways, means of egress, and heavily trafficked areas. *Cohen*, 442 S.W.3d at 831 (footnote 9). This is dissimilar to the location of the Sellers Bros. extension cord cover inside the store. For instance, Cohen's expert refers to a portion of the "International Building Code—2003 Edition" and "International

20

Fire Code—2003 (same)" that applied to "means of egress". *Cohen*, 442 S.W.3d at 831 (footnote 9). Both codes define "means of egress" as "A continuous and unobstructed path of vertical and horizontal egress travel from any occupied portion of a building or structure to a public way. A means of egress consists of three separate and distinct parts: the exit access, the exit and the exit discharge." Int'l Bldg. Code, ch. 10 § 1002.1 (2003); Int'l Fire Code, ch. 10 § 1002.1 (2003). Both codes also define "public way" as "A street, alley or other parcel of land open to the outside air leading to a street, that has been deeded, dedicated or otherwise permanently appropriated to the public for public use and which has a clear width and height of not less than 10 feet (3048 mm)." *Id.* These codes simply do not apply to the area inside this Sellers Bros. store where the extension cord cover was on the floor at the cash register.

Second, Resendiz incorrectly relies on Cohen's expert's reference to portions of the "American National Standards Institute: ICC/ANSI A 117.1- 'American National Standard for Accessible and Usable Buildings and Facilities'—2003," and "Texas Accessibility Standard-1994," and "Americans with Disabilities Act—28 CFR Part 36-1994." Appellant's Br. 9. (*citing Cohen*, 442 S.W.3d 831 (Tex. App. 2014) (Footnote 9)). All three of these standards or codes specifically state that changes in floor levels greater than ¼ inch in height and not more than ½ inch in height shall be beveled with a slope not steeper than

21

1:2. ICC/ANSI A117.1 ch. 3 § 303.3 (2003); Texas Accessibility Standard ch. 4.5 § 4.5.2 (1994); Americans with Disabilities Act of 1990. Pub. L. 101-336, ch. 4 § 4.5.2, 104 Stat. 328 (1994) (to be codified at 28 § C.F.R. pt. 36, app. A.). Sellers Bros. extension cord cover and or alleged mat meets these standards and Resendiz has presented no evidence that it doesn't.

Contrary to Resendiz's argument, the photos of the extension cord cover and testimony from Resendiz that an alleged mat was in the area do not amount to a genuine issue of fact for the jury to decide. The trial court thoroughly weighed the evidence of the photos and the testimony provided by both parties in deposition and affidavit form and properly determined that there was no genuine issue of fact for the jury to weigh in on. Sellers Bros. was correctly granted summary judgment because the alleged mat and or permanent extension cord cover on which Plaintiff tripped did not pose an unreasonable risk of harm, and Resendiz did not offer more than a scintilla evidence that it did.

**b. Sellers Bros. had no notice that any alleged mat or the extension cord cover was an unreasonably dangerous condition.**

For the reasons conclusively proven above, the alleged mat and/or the extension cord cover was not an unreasonably dangerous condition. Even if the Court finds that some manner in which the alleged mat and/or extension cord cover was laying amounted to more than a scintilla of evidence that it created an

22

unreasonably dangerous condition, despite case law holding it was not, Resendiz did not prove that Sellers Bros. had notice of the condition prior to her accident, which is fatal to her cause of action. The duty owed is to exercise reasonable care to protect against danger from a condition on the property that creates an unreasonable risk of harm which the owner knew or by the exercise of reasonable care would discover. *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162–63 (Tex. 2007). Because the core of the duty depends on actual or constructive knowledge of a dangerous condition (notice) that a reasonable inspection should reveal, it follows that an owner or occupier is not liable for conditions on its premises unless it knows or by reasonable inspection would have known of the danger. *Id.*

There is no evidence that even one of the millions of customers who shopped at this Seller Bros. location, or any location for that matter, has had an issue or complained of the extension cord covers, especially the exact cover in question in this case. (CR 74-76 at 30:2 – 32:4; CR 77 at 33:16-25; CR 97-10 at ¶¶ 7, 11, 12). Further, there is no evidence that even one of the millions of customers who shopped at this Seller Bros. location, has had an issue or complained of an alleged mat in this location of the store. (CR 97-10 at ¶¶ 8, 12) More importantly, there is no evidence that any of Sellers Bros.' employees had knowledge or notice that an alleged mat and/or extension cord cover was an unreasonable risk of harm prior to the incident. *Id.* In fact, Resendiz admitted that she did not see anything

23

wrong with the alleged mat and/or extension cord cover. (CR 83-85 at 46:24 - 48:17). Further, she said she had not heard of anyone complaining to Sellers Bros. regarding the alleged mat and/or extension cord cover. (CR 74-76 at 30:2 – 32:4; CR 77 at 33:16-25).

The question of whether a defendant knew or should have known of an unreasonably dangerous condition is a threshold question of duty in a premises liability case. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). The absence of evidence of notice on the part of the defendant is fatal to a plaintiff's premises liability claim. *Id.* Accordingly, Sellers Bros. was properly granted judgment as a matter of law because it negated a second essential element of Resendiz's causes of action - the notice requirement.

### c. Seller Bros. acted reasonably to make the premises safe as a matter of law.

As a general rule, a landowner must use reasonable care to make the premises safe for the use of invitees. *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 997). The undisputed evidence conclusively proves that Sellers Bros. used reasonable care with respect to making the Sellers Bros. store premises safe. At the time of the incident, Sellers Bros. had a safety program and a floor inspection program to identify potential hazards or defects at the property. (CR 97-10 at ¶¶ 9 and 10). At no time prior to Resendiz's incident did any employee, agent or representative of Sellers Bros. identify or become aware of any defect or

24

hazard of any type with an alleged mat and/or the extension cord cover that Resendiz complains of. (CR 97-10 at ¶¶ 7-12; CR 74-76 at 30:2 – 32:4; CR 77 at 33:16-25). Further, the extension cord cover is a permanent device and is screwed very tightly into the floor, and throughout its length only sticks up barely more than a 1/4 of an inch at its highest point. (CR 97-10 at ¶ 15; 7-12; FSCR 19-24 (color photos)).

In actuality, the permanent extension cord cover operates to make the floor and premises more safe by concealing exposed wires and cords that are necessary to power the cash register and nearby refrigerator display. (CR 97-10 at ¶ 17). The cover prevents the wires from being a tripping hazard, and protects the wires from the heavy shopping carts. *Id.* The undisputed evidence proved that Seller Bros.' inspection procedures either met or exceeded the standards for grocery stores in Harris County, Texas. Sellers Bros.' safety and inspection procedures were reasonable. *Id.* at 18. Therefore, Sellers Bros conclusively negated Resendiz's essential element that Sellers Bros. did not make the premises reasonably safe.

## B. No-Evidence Motion for Summary Judgment.

Resendiz did not provide more than a scintilla of evidence to support a premises liability claim against Sellers Bros. First, Resendiz failed to present any evidence that the condition of the alleged mat or extension cord cover she allegedly

25

tripped on or its manner of display was such that it created an unreasonable risk of harm. Resendiz failed to present any evidence that the mat or extension cord cover was sticking up, had humps or lumps, ruffled, wrinkled, bunched-up, or otherwise in such a condition as to create an unreasonable risk of harm. Therefore, Plaintiff had no evidence that a condition on the premises posed an unreasonable risk of harm.

Second, Resendiz had no evidence that Sellers Bros. knew or reasonably should have known of an unreasonable condition on its premises. There is no evidence that Sellers Bros. knew or should have known that an alleged mat and/or extension cord cover created an unreasonable condition on its premises at the time of Resendiz's incident.

Third, Resendiz had no evidence that Sellers Bros. failed to exercise reasonable care. The question whether a defendant exercised reasonable care to reduce or eliminate an unreasonable risk of harm is also an essential element in a premises liability case. Resendiz produced no evidence that Sellers Bros. failed to operate as a reasonable or prudent owner, or that it failed to reduce or eliminate an unreasonable risk of harm at the property at the time of incident.

Fourth, Resendiz had no evidence that Sellers Bros. acts or omissions caused her accident. Proximate cause is also an essential element of Resendiz's premises liability case against Sellers Bros. Without evidence that Sellers Bros.' acts or

26

omissions proximately caused Resendiz's incident or injuries, Resendiz cannot prevail as a matter of law. As such, Resendiz has no evidence on another essential element of her claim. The fact that proof of causation is difficult does not provide a plaintiff with an excuse to avoid introducing some evidence of causation. *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 937 (Tex. 1998); citing *Schaefer v. Texas Emp. Ins. Ass'n*, 612 S.W.2d 199, 205 (Tex. 1980).

In summary, Resendiz has no evidence that an alleged mat or extension cord cover posed an unreasonably dangerous condition. Resendiz has no evidence that Sellers Bros. knew or reasonably should have known of such a condition. Resendiz has no evidence that Sellers Bros. breached its duty of ordinary care, or that Sellers Bros. breach proximately caused the Plaintiff's injuries. Because Resendiz has no evidence to establish any of the threshold requirements in her premises liability case, Sellers Bros. was properly granted judgment as a matter of law pursuant to Tex. R. Civ. Proc. 166a(i).

## CONCLUSION AND PRAYER FOR RELIEF

The issues that Resendiz has raised before this Court are without merit because there was no error of the trial court. Sellers Bros. properly negated at least one if not all of the Resendiz's essential elements under a premises liability negligence action. The trial court's summary judgment was appropriate and should be affirmed.

27

WHEREFORE, PREMISES CONSIDERED, Appellee Sellers Bros. Inc. prays that this Honorable Court affirm the trial court's decision and for such other relief, both general and special, at law or in equity to which Appellee may be justly entitled.

Respectfully submitted,

TEKELL, BOOK, ALLEN & MORRIS, L.L.P.

By: */s/ William C. Book*
    William C. Book
    State Bar No. 02622000
    wb@tekellbook.com
    1221 McKinney, Suite 4300
    Houston, TX 77010
    (713) 222-9542
    (713) 655-7727 (Fax)

    ATTORNEY FOR APPELLEE,
    SELLERS BROS., INC

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2015, a true and correct copy of the above and foregoing instrument was delivered unto all interested parties, in accordance with TEX. R. APP. P. 9.5.

Mr. Jack Todd Ivey
State Bar No.: 00785985
jti@iveylawfirm.com
Mr. Jacob Barber
State Bar No.: 24076258
jdb@iveylawfirm.com
Ivey Law Firm, P.C.
11111 Katy Freeway, Suite 580
Houston, Texas 77079
713-225-0015
713-225-5313 (Fax)

**Via Email and/or Fax – 713-225-5313**

*/s/ William C. Book*
William C. Book