**REVERSED and REMAND and Opinion Filed February 4, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01252-CV**

**SHERIE MCINTYRE, Appellant**
**V.**
**UNITED SUPERMARKETS, LLC, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-04087-2018**

## MEMORANDUM OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Smith

Appellant Sherie McIntyre sued appellee United Supermarkets, LLC to recover damages for personal injuries she claims she suffered when she fell in the parking lot of a Market Street grocery store in Frisco, Texas. United filed a combined motion for traditional and no-evidence summary judgment on McIntyre's premises liability claim, which the trial court granted. In two issues, McIntyre asserts the trial court erred because she presented evidence raising genuine issues of material fact on her claim. We agree. We reverse the trial court's judgment and remand for further proceedings.

## Background

In January 2018, United opened a Market Street grocery store in Frisco, Texas. The following month, McIntyre began shopping at the store regularly.

On June 11, 2018, McIntyre drove to Market Street for a routine shopping trip. She parked her Ford F250 truck, opened her door, and "hopped down." "Right before hitting the ground," she admitted seeing "a little bitty part of the white line." She did not notice any other part of the "pothole" before "hopping" down.[1] McIntyre's high heels landed in the pothole causing both of her ankles to roll. She then fell, injuring both ankles and her shoulder.

The next day, McIntyre told her husband that she fell in "something" in the parking lot. They went to the store and talked to Chris Trevino, the store manager. After reviewing surveillance video, she confirmed her parking spot and identified the pothole where she fell. The pothole measured three quarters of an inch at the deepest point and approximately six to seven inches in length.

McIntyre sued United alleging a premise defect. United answered and subsequently filed a combined traditional and no-evidence motion for summary judgment. United argued that as a matter of law, the pothole was not unreasonably dangerous, and it was open and obvious. It further claimed there was no evidence

---

[1] McIntyre calls the condition a pothole, and United refers to it as a divot. For consistency, we will call it a pothole. We reach no conclusion about whether the alleged condition was a pothole, a divot, or something else.

supporting any of the elements for premises liability or notice of an unreasonably dangerous condition. McIntyre responded and attached, among other things, deposition excerpts and an expert report. The trial court granted summary judgment without specifying the grounds. This appeal followed.

## No-Evidence Summary Judgment

When, as here, a defendant moves for both traditional and no-evidence summary judgment and the trial court grants summary judgment without stating its grounds, we first review the trial court's decision as to the no-evidence motion for summary judgment. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the non-movant failed to produce more than a scintilla of evidence raising a genuine issue of material fact on one or more of the challenged elements of her claim, we need not address whether traditional summary judgment was proper. *See Ridgway*, 135 S.W.3d at 600; *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 662 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

We review summary judgment orders de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The trial court may grant a no-evidence motion for summary judgment unless the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the elements challenged by the motion. *Ridgway*, 135 S.W.3d at 600.

More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* at 601. In determining whether the nonmovant has produced more than a scintilla of evidence, we view the evidence in the light most favorable to the nonmovant and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

Here, United argued there was no evidence of any of the four essential elements of McIntyre's premises liability claim: (1) actual or constructive knowledge of a condition on the premises, (2) that posed an unreasonable risk of harm, (3) in which it failed to exercise reasonable care to reduce or eliminate the risk, and (4) the failure proximately caused her injury. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002); *Shoemaker v. Kohl's Dep't Stores, Inc.*, No. 05-16-00273-CV, 2017 WL 1192797, at *1 (Tex. App.—Dallas Mar. 31, 2017, no pet.) (mem. op.). Once United alleged there was no evidence of these essential elements, the burden shifted to McIntyre to produce more than a scintilla of evidence raising a genuine issue of material fact as to each element. *See* TEX. R. CIV. P. 166a(i).

The parties agree McIntyre was an invitee. A property owner or occupier in a premises liability case owes an invitee a duty to reduce or eliminate an unreasonable risk of harm created by a premises condition that the owner or occupier of land knows about or would have discovered in the exercise of reasonable care.

–4–

*See Phillips v. Abraham*, 517 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

We begin by considering whether McIntyre produced evidence of United's constructive knowledge of the pothole. Courts consider a combination of proximity, conspicuity, and longevity of the dangerous condition in making this determination. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567–68 (Tex. 2006). Trevino testified that he inspected the parking lot approximately twenty to twenty-four times during the first six months of the store's opening. He noticed the spot where McIntyre fell but "didn't feel that it needed to be repaired . . . It never stood out as a hazard." Thus, Trevino's repeated inspections put him in close proximity to observe the pothole, which he in fact did notice. *Id.* (evidence of a dangerous condition's conspicuousness and proximity of employees to condition is relevant). Trevino acknowledged that the parking lot was restriped before United opened the new store and had not been restriped since then. A picture of the pothole shows the white stripe going over part of the pothole indicating it had been present for at least six months. *Id.* (noting that temporal evidence of "how long the hazard was there" is required). Thus, McIntyre produced more than a scintilla of evidence to raise a genuine issue of material fact as to whether United had constructive notice of the pothole.

Next, we consider whether McIntyre produced evidence that the pothole posed an unreasonable risk of harm. "A condition poses an unreasonable risk of

harm for premises-defect purposes when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). The extent to which a condition is unreasonably dangerous is ordinarily a fact question. *Pipkin*, 383 S.W.3d at 671.

There is no definitive, objective test that may be applied to determine whether a specific condition presents an unreasonable risk of harm. *See Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 751 (Tex. 1970); *see also Valentine v. ASA Holdings Real Estate Mgmt.*, No. 09-18-00447-CV, 2020 WL 1173703, at *5 (Tex. App.—Beaumont Mar. 12, 2020, no pet.) (mem. op.). When considering whether a condition poses an unreasonable risk of harm, courts have considered (1) whether the condition was clearly marked, (2) the height of the condition, (3) whether the condition met applicable safety standards, and (4) whether the condition was unusual. *See Cohen v. Landry's Inc.*, 442 S.W.3d 818, 827 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also Valentine*, 2020 WL 1173703, at *3. We consider each of these factors in turn.

McIntyre presented evidence the pothole was not clearly marked. Pictures from the parking lot do not depict any markers or warnings in the parking spot. Further, Trevino testified he took no action to mark the hazard or otherwise warn invitees about it.

McIntyre provided evidence that the size and shape of the pothole made it an unreasonably dangerous condition. The pothole measured between six and seven inches in length and three quarters of an inch at its deepest point. Jason English, a professional engineering consultant, described the "defective area of disrepair" as a "concrete popout, which is generally a cone-shaped hole in the concrete surface." He opined in his expert report that "a walking surface unevenness or depression of such size and depth as in this matter can cause a pedestrian's foot to unexpectedly rotate or flex and cause injury as occurred when Mrs. McIntyre's foot landed in the hole as she exited her pickup truck."

English's report also provided evidence of applicable safety standards. He opined United "knew or should have been aware of the various codes, standards, and other authoritative literature that recognize the fall hazards associated with small abrupt changes of elevation in walkways." He stated,

> Changes in elevation (rises or depressions) in walking surfaces of the magnitude present in this matter due to the damaged section of the exterior concrete walkway have long been recognized in the codes, standards, and authoritative safety literature as presenting a serious and unreasonable risk of pedestrian missteps and falls.

He listed and quoted several codes and literature providing safety standards. *See, e.g., Cohen*, 442 S.W.3d at 828 (reversing summary judgment because expert report, in part, provided evidence of applicable safety standards). Considering English's affidavit in its entirety, we conclude it is relevant and some evidence establishing

applicable safety standards regarding whether the pothole was unreasonably dangerous.

In reaching this conclusion, we reject United's argument that English's affidavit is conclusory. Relying on evidence rule 702, United argues English's testimony was inadmissible because whether the pothole was unreasonably dangerous was within the common knowledge of jurors. *See* TEX. R. EVID. 702 (expert may testify about specialized knowledge when it will help trier of fact understand an issue); *see also K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) ("Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."). United did not raise a rule 702 objection in the trial court on this ground. Essentially, United contends that because English's opinions have been excluded by other courts, we should "follow the lead" of these other courts and not consider them. We reject United's invitation.

United has not cited to any specific conclusory statements in English's report. Rather, United argues that English's report is conclusory because he provided a "cut-and-paste job" that is a "rather generic" opinion that "he regurgitates every time he is hired." However, such statements provide no particular basis for United's objection. Objections that statements are conclusory may not be conclusory themselves. *See Diaz v. D.R. Wright Enter.*, No. 05-17-00172-CV, 2018 WL 3484227, at *2 (Tex. App.—Dallas July 19, 2018, no pet.). Accordingly, United's

challenge to the conclusory nature of the report is waived. *See, e.g., MaximusAlliance Partners, LLC v. Faber*, No. 05-13-01688-CV, 2015 WL 707033, at *9 (Tex. App.—Dallas Feb. 17, 2015, no pet. ) (party waived challenges to conclusory summary judgment evidence by failing to describe what made it conclusory); *see also* TEX. R. APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made with appropriate citations to the record and case law).

Regardless, English's expert report is competent summary judgment evidence as to whether this pothole is an unreasonably dangerous condition and whether applicable safety standards were met. Based on his qualifications, background, and training, English explained the interplay between human ergonomics, visual characteristics, and unanticipated characteristics of walking surfaces that could cause injuries if a premises owner failed to follow safety standards. He discussed safety standards and opined how United's failure to follow them, along with its own safety guidelines, created the condition that caused McIntyre's injuries.

Keeping in mind there is no determinative test for whether a condition poses an unreasonable risk of harm but considering those factors discussed above in the context of the evidence McIntyre presented, we conclude she presented more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether the pothole poses an unreasonable risk of harm. *See Hall*, 177 S.W.3d at 646 (citing *Reliable Consultants, Inc. v. Jaquez*, 25 S.W.3d 336, 342 (Tex. App.—

Austin 2000, pet. denied) ("It is important to note that reasonableness determinations as the ones here are fact-intensive and, as such, well-suited for a jury's determination.")). Thus, the trial court could not have granted the no-evidence summary judgment on this ground.

We now consider whether McIntyre presented evidence that United failed to exercise reasonable care to reduce or eliminate the risk. United admitted it did not make any repairs to the parking lot between January and June 2018 even though Trevino noticed the pothole. Trevino testified he did not do anything to warn or mark the hazard on the day McIntyre fell. He admitted that in the past, if he noticed a condition in the parking lot, he flipped over a shopping cart and put it in the spot to prohibit someone from parking there. He also explained he could have purchased a cone and used it to mark the spot. We conclude Trevino's testimony is some evidence to support McIntyre's claim that United failed to use reasonable care to eliminate the risk; therefore, the trial court could not have granted the no-evidence summary judgment on this basis.

Finally, McIntyre asserts she presented evidence that United's actions proximately caused her injuries. The components of proximate cause are cause-in-fact and foreseeability. *Hall*, 177 S.W.3d at 647. A defendant's negligence is a cause-in-fact of the plaintiff's injuries if the negligent act or omission was a "substantial factor" in bringing about the injury, without which the harm would not have occurred. *Id*. at 648.

United's policies state that "[t]rips are usually the result of an unseen obstruction or an unexpected irregularity in the walking surface." As part of its "culture of safety," it instructed employees to "be on the lookout for the following hazards: . . . Surface irregularities on outside pavement and asphalt." Trevino knew about the pothole in the parking lot but failed to warn of the defect. English opined in his report that the "principal causative factor related to Mrs. McIntyre's fall incident was the presence of a defective area of disrepair in the exterior concrete parking lot surface." We conclude this is some evidence to raise a genuine issue of material fact that United's conduct and omission was a substantial factor in bringing about her injury.

The Texas Supreme Court has stated that foreseeability "means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985). Foreseeability does not require that a person anticipate the precise manner in which an injury will occur once he has created a dangerous situation through his negligence. *Hall*, 177 S.W.3d at 648. Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Id.*[2]

---

[2] To the extent United argues that to have foreseen her fall, it "would have had to anticipate a person wearing 3" high heels would jump down from a tall truck, not look to see where her feet would land, and land right in the deepest part of the depression," is incorrect. Such a precise, sequence of events is not required to satisfy foreseeability. *Id.* It is not required that a particular accident should have been foreseen

–11–

Again, based on United's safety policies, it knew that potholes could cause patrons to trip and fall. Part of Trevino's routine check of the parking lot included looking and reporting such hazards. He admitted that depending on how a customer parked and the person's line of sight, the customer might not see the pothole before getting out of the car. We conclude McIntyre presented evidence that falling on a pothole while exiting her vehicle and injuring herself was an anticipated danger and therefore foreseeable. The trial court could not have granted the no-evidence summary judgment on this ground.

McIntyre produced more than a scintilla of evidence on each challenged element of her premises liability claim; therefore, the trial court's judgment cannot be affirmed based on United's no-evidence motion for summary judgment. We now consider whether United established, as a matter of law, that the pothole was not an unreasonably dangerous condition and that the condition was open and obvious.

**Traditional Summary Judgment**

To prevail on a traditional motion for summary judgment, the movant must show no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). United relies on the same factors and evidence as discussed above to argue that, as a matter of law, the pothole in this case is not an unreasonably dangerous condition. McIntyre likewise relies on the same evidence.

---

but rather that the injury be of such a general character as might reasonably have been anticipated. *Nixon*, 690 S.W.2d at 551.

–12–

For the same reasons discussed above, we conclude United failed to carry its burden to show no genuine issue of material fact exists that the pothole was not an unreasonably dangerous condition.

We next consider whether United met its burden to show the pothole was open and obvious. A landowner's duty to an invitee is to make the premises safe. *Austin*, 465 S.W.3d at 202. A landowner can satisfy this duty by eliminating an unreasonably dangerous condition or mitigating the condition so that it is no longer unreasonably dangerous. *Id.* A landowner can also satisfy the duty, in most cases, by providing an adequate warning of the danger. *Id.* The condition then no longer poses an unreasonable risk because the law presumes an invitee will take reasonable measures to protect herself against known risks. *Id.* Thus, the general rule of a landowner to an invitee is "to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *Id.* at 203.

A dangerous condition that an invitee should reasonably be aware of is one that is open and obvious. *Culotta v. DoubleTree Hotels LLC*, No. 01-18-00267-CV, 2019 WL 2588103, at *3 (Tex. App.—Houston [1st Dist.] June 25, 2019, pet. denied) (mem. op.). Defects that are open and obvious or otherwise known to the invitee are outside the landowner's general duty to warn. *Austin*, 465 S.W.3d at 203. Duty is a question of law, and whether a defect qualifies as "open and obvious," such

that there is no duty to warn, presents a question of law for the court.  *Culotta*, 2019 WL 2588103, at *3.

These two no-duty circumstances–when a hazard is known to the invitee and when a hazard is open and obvious–are two sides of the same coin: one focused on the subjective knowledge of the invitee and the other on what would be reasonably observable to a person exercising ordinary care under an objective standard.  *Id*.

There is no evidence McIntyre knew of the pothole.  She testified she did not notice it before or after she parked.  McIntrye testified she saw where her feet were going when she exited the truck, but did not see the pothole because it was right under her truck.  Part of the pothole was difficult to see because it was in the white-painted parking stripe.

McIntyre also submitted a videotaped reenactment demonstrating the pothole was not visible from her line of sight when she exited her truck.[3]  Although the video shows the white-painted parking stripe, it does not show the pothole, which is marked by a red circle under the truck.  Instead, the video shows the woman exiting the truck, without a view of the red circle, and her heels landing directly on the red circle.

---

[3] To the extent United argues the video demonstration is irrelevant for various reasons, it did not raise any of these objections to the trial court.  *See Sein*, 551 S.W.3d at 163–64.  Thus, the video demonstration is evidence we consider in our analysis.

–14–

United, however, knew about the pothole from Trevino's parking lot inspections and knew that a customer exiting a vehicle, given her line of sight, might not see the pothole.

English's expert report provided information regarding the human eye and how it perceives objects, which is instructive on whether the pothole was open and obvious. He described "human visual characteristics" and explained a person's direct line of sight is typically limited to about two to five degrees of arc around a point of fixation. Peripheral vision, while an excellent detector of objects in motion, is a poor detector of color and details and provides very poor depth perception. English explained that perception "not only involves the visual detection of an object, but also actually comprehending the object's significance, that is, determining whether the presence of a particular object requires any response or action." He opined that the presence of "this unanticipated fall hazard, especially in consideration of the . . . limitations of human visual acuity, perception, and reasonable expectancy, along with the lack of readily apparent visual cues and warnings to attract a person's attention to the hazard" created the unreasonably dangerous condition.

Viewing the evidence in the light most favorable to McIntyre, we conclude she produced more than a scintilla of evidence to raise a fact issue regarding whether the pothole was open and obvious. As such, the trial court could not grant summary judgment on the ground that the pothole, as a matter of law, was open and obvious.

In reaching this conclusion, we reject United's reliance on *Briones* and *Jordan* as these cases are factually distinguishable. *Briones v. Levine's Dep't Store, Inc.*, 446 S.W.2d 7 (Tex. 1969) (upholding jury verdict in favor of defendant in premises liability case "upon a ground properly raised, but not discussed in the opinion of the Court of Civil Appeals" and ground was not whether condition was open and obvious); *Jordan v. Tex. Children's Hospital*, No. 14-17-00699-CV, 2018 WL 4137209 (Tex. App.—Houston [14th Dist.] Aug. 30, 2018, no pet.) (mem. op.) (affirming summary judgment, in part, because invitee knew about condition on premises that caused fall).

## Conclusion

We conclude McIntyre presented more than a scintilla of probative evidence to raise a genuine issue of material fact regarding every element of her premises liability claim; therefore, the trial court erred by granting United's no-evidence motion for summary judgment. We sustain her first issue.

We further conclude United did not establish as a matter of law that the pothole was not an unreasonably dangerous condition or that the pothole was open and obvious, thereby negating United's duty to warn McIntyre of the pothole. We sustain McIntyre's second issue.

Accordingly, we reverse the trial court's judgment and remand for further proceedings.

/Craig Smith/
CRAIG SMITH
JUSTICE

191252F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

SHERIE MCINTYRE, Appellant

No. 05-19-01252-CV      V.

UNITED SUPERMARKETS, LLC, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas Trial Court Cause No. 416-04087-2018.
Opinion delivered by Justice Smith. Justices Schenck and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellant SHERIE MCINTYRE recover her costs of this appeal from appellee UNITED SUPERMARKETS, LLC.

Judgment entered February 4, 2021.